1

2                                                      THE HONORABLE JOHN H. CHUN

3

4

5

6

7                              UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
                                       AT SEATTLE
8
      U.S. PATENT NO. 7,679,637 LLC          Case No. 2:23-cv-00592-JHC
9
                          Plaintiff,         **GOOGLE'S RULE 12(B)(6) MOTION**
10                                           **TO DISMISS THE FIRST AMENDED**
             v.                              **COMPLAINT**
11
      GOOGLE LLC,                            **NOTE ON MOTION CALENDAR:**
12                                           **September 15, 2023**
                          Defendant.
13                                           **ORAL ARGUMENT REQUESTED**

14

15

16

17

18

19

20

21

22

23

24

25

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS        **Perkins Coie LLP**
(2:23-cv-00592-JHC)                          1201 Third Avenue, Suite 4900
                                               Seattle, WA 98101-3099
                                               Phone: 206.359.8000
                                               Fax: 206.359.9000

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND .................................................................................................. 2

       A.    Plaintiff Amended The Complaint To Allege Indirect Infringement After Google
             Provided Notice Of Plaintiff's Defective Direct Infringement Allegations ........... 2

       B.    The '637 Patent Acknowledges That The Claimed Invention Merely Applies
             Conventional "Time-Shifting" To The Field Of Web Conferencing ..................... 3

       C.    The '637 Patent Discloses Conventional "Time-Shifting" And "Audio Time-Scale
             Modification" Technologies That Existed Before The Claimed Invention ........... 4

       D.    The '637 Patent Acknowledges That The Claimed Web Conferencing System
             Recites Generic Computer Components ............................................................... 6

       E.    The '637 Patent's Purported Problem And Solution Were Well-Understood
             Over A Decade Before The Patent ........................................................................ 8

       F.    The FAC Continues To Point To Third-Party Encoders For The Accused
             Functionality ........................................................................................................ 8

III.   LEGAL STANDARD ......................................................................................... 9

IV.    THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE '637
       PATENT CLAIMS INELIGIBLE SUBJECT MATTER UNDER § 101 ......................... 9

       A.    Step 1:  The '637 Patent Claims The Abstract Idea Of Playing Back Recorded
             Content ................................................................................................................ 11

             1.    The Specification Confirms That The Asserted Claims Merely Recite
                   The Abstract Idea Of Playing Back Recorded Content ........................... 11

             2.    The Asserted Claims Use Functional Language That Recites The
                   Abstract Idea Of Playing Back Recorded Content ................................... 14

       B.    Step 2: The Individual Elements And Ordered Combination Function In A
             Conventional Way And Do Not Supply An Inventive Concept .......................... 20

             1.    The '637 Patent Acknowledges That Each And Every Claimed
                   Component Is Conventional .................................................................... 20

             2.    The Asserted Claims Recite A Conventional Ordering Of Steps ............. 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

V.      THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE FAC
        FAILS TO PLAUSIBLY  ALLEGE THAT GOOGLE "BENEFITS" OR "USES" THE
        ENTIRE CLAIMED SYSTEM ...................................................................................... 24

        A.      The FAC Is Devoid Of Allegations That Google Benefits From Each Claimed
                Component ........................................................................................................ 24

        B.      Plaintiff Affirmatively Alleges The Opposite Of Control By Google For The
                Accused YouTube Website ............................................................................... 26

VI.     CONCLUSION ............................................................................................................ 29

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – ii
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aatrix Software v. Green Shades Software,*
  882 F.3d 1121 (Fed. Cir. 2018) ............................................................. 11

*Affinity Labs v. DirecTV,*
  838 F.3d 1253 (Fed. Cir. 2016) ............................................................. 15

*Alice Corp. v. CLS Bank,*
  573 U.S. 208 (2014) ............................................................. 11, 22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................. 10

*Bell Atl. v. Twombly,*
  550 U.S. 544 (2007) ............................................................. 9

*Bot M8 v. Sony Corp. of Am.,*
  4 F.4th 1342 (Fed. Cir. 2021) ............................................................. 2, 10, 28

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994) ............................................................. 10, 3

*BSG Tech v. Buyseasons,*
  899 F.3d 1281 (Fed. Cir. 2018) ............................................................. 12

*Caldwell v. Caldwell,*
  2006 WL 618511 (N.D. Cal. 2006) ............................................................. 10

*Centillion Data Sys. v. Quest Commc'ns Int'l,*
  631 F.3d 1279 (Fed. Cir. 2011) ............................................................. 30, 31

*CG Tech. Dev. v. William Hill U.S. Holdco,*
  404 F. Supp. 3d 842 (D. Del. 2019) ............................................................. 21

*ChargePoint v. SemaConnect,*
  920 F.3d 759 (Fed. Cir. 2019) ............................................................. 19, 24

*Clarilogic v. FormFree Holdings,*
  681 F. App'x 950 (Fed. Cir. 2017) ............................................................. 26

*Credit Acceptance v. Westlake Servs.,*
  859 F.3d 1044 (Fed. Cir. 2017) ............................................................. 21

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – iii
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Elec. Power v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)......................................................... 15, 16, 26

*FairWarning IP v. Iatric Sys.*,
   839 F.3d 1089 (Fed. Cir. 2016)......................................................... 21

*Hawk Tech. Sys. v. Castle Retail*,
   60 F.4th 1349 (Fed. Cir. 2023)......................................................... 12

*IBM v. Zillow Grp.*,
   50 F.4th 1371 (Fed. Cir. 2022)......................................................... 20

*IBM v. Zillow Grp., Inc.*,
   2022 WL 704137 (W.D. Wa. Mar. 9, 2022)......................................................... 9

*Intellectual Ventures I v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)......................................................... 2, 11, 12

*Intellectual Ventures I v. Motorola Mobility*,
   870 F.3d 1320 (Fed. Cir. 2017)......................................................... 26, 28

*Intellectual Ventures I v. Symantec*,
   838 F. 3d 1307 (Fed. Cir. 2016)......................................................... 11, 17

*Interval Licensing v. AOL*,
   896 F.3d 1335 (Fed. Cir. 2018)......................................................... 19, 20

*RaceTech v. Ky. Downs*,
   167 F.Supp. 3d 853 (W.D. Ky. 2016)......................................................... 20

*SAP Am. v. InvestPic*,
   898 F.3d 1161 (Fed. Cir. 2018)......................................................... 11, 12, 19, 26

*Secured Mail v. Universal Wilde*,
   873 F.3d 905 (Fed. Cir. 2017)......................................................... 11

*Smart Sys. Innovations v. Chi. Transit*,
   873 F.3d 1364 (Fed. Cir. 2017)......................................................... 19

*Synchronoss Techs. v. Dropbox*,
   987 F.3d 1358 (Fed. Cir. 2021)......................................................... 26

*TecSec v. Adobe*,
   978 F.3d 1278 (Fed. Cir. 2020)......................................................... 12

*Threshold Enters. v. Pressed Juicery*,
   445 F. Supp. 3d 139 (N.D. Cal. 2020)......................................................... 10, 31

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – iv
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Traxcell Techs. v. Google*,
  2022 WL 17072015 (N.D. Cal. 2022)........................................................ 28, 31

*Two-Way Media v. Comcast Cable*,
  874 F.3d 1329 (Fed. Cir. 2017)........................................................ 15, 25

*Warren v. Fox Family Worldwide*,
  328 F.3d 1136 (9th Cir. 2003)........................................................ 10, 31

**Statutes and Rules**

35 U.S.C. § 101........................................................ *passim*

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6)........................................................ *passim*

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – v
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## I.      INTRODUCTION

2        The First Amended Complaint ("FAC") should be dismissed for two independent reasons.

3   <u>First</u>, the asserted patent claims are directed to a long-established abstract idea, adding only

4   conventional computing components in functional terms.  The Supreme Court made clear in *Alice*

5   that such claims are ineligible under 35 U.S.C. § 101 for extending patent monopolies to ideas—

6   not innovations.  The Federal Circuit instructs that patent eligibility under § 101 is a "threshold"

7   question of law and properly addressed on a motion to dismiss.  Second, the FAC asserts only

8   "system" claims.  The Federal Circuit requires a single party to control and benefit from each and

9   every element of the whole system accused of infringement.  Despite two attempts at pleading its

10  case, Plaintiff fails to plead such control and benefit by Defendant Google LLC ("Google").

11  Accordingly, the FAC fails to state a claim upon which relief can be granted under Plaintiff's own

12  allegations and should be dismissed for these two independent reasons.

13        ***Section 101 Ineligibility:***  Asserted U.S. Patent No. 7,679,637 ("'637 patent") purports to

14  solve a problem in the field of ***web*** conferencing when a participant joins a meeting late and cannot

15  "observe a previously recorded part of the meeting while the meeting is still in progress."  ('637

16  patent, 2:50-54).  The patent admits the solution is nothing more than playing back recorded

17  content during and after the live meeting.  The patent refers to this basic function as "time-

18  shifting."  But the idea of recording a live broadcast and replaying parts of it during the broadcast

19  has been around since at least the 1960s (*e.g.*, instant replay during live sports broadcasts).[1]  Even

20  the '637 patent acknowledges that "time shifting" existed before the patent, including using VCRs

21  and later DVRs.  (*Id.*, 3:7-18).  Indeed, the very problem and solution of the '637 patent were

22

---

23  [1]      According to the Smithsonian Institution, the first use of instant replay during live
      television was during the 1963 Army-Navy football game in 1963.  *See* Eric S. Hintz, The
24  Invention of Instant Replay, SMITHSONIAN NATIONAL MUSEUM OF AMERICAN
      HISTORY (Jan. 20, 2022) (https://invention.si.edu/invention-instant-replay).

25  GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 1
      (2:23-cv-00592-JHC)

1

already used in pre-web, live video conferencing technology over a decade earlier.  (Ex. 1, U.S.

2

Patent 5,692,213 filed 12 years before '637 patent).  The '637 patent merely applies this decades-

3

old idea to the internet.  ('637 patent, 2:33-35) (admitting asserted patent is directed towards "the

4

application of time-shifting presentation techniques to the field of web conferencing").  It is well

5

settled that an "abstract idea does not become nonabstract by limiting the invention to a particular

6

field of use or technological environment, such as the Internet." *Intellectual Ventures I v. Capital*

7

*One Bank*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).  That is all the '637 patent claims.  Dismissal of

8

the FAC is therefore appropriate under § 101.

9

    ***Defective Infringement Allegations:***  The Federal Circuit in *Synchronoss* and its progeny

10

instruct that direct infringement of a system claim requires a single entity to control and benefit

11

from each and every element of the accused system.  Despite two attempts at pleading its case, the

12

FAC remains devoid of allegations that Google benefited from each and every element of the

13

accused system.  This is reason alone to dismiss the FAC in its entirety.  Further, the FAC and

14

materials incorporated by it expressly point to third party "encoders" in the accused YouTube

15

website.  By Plaintiff's own admissions, Google is neither in possession of nor controls all

16

elements of the accused system.  "Where, as here, the factual allegations are actually inconsistent

17

with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8*

18

*v. Sony Corp.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).  This is further reason to dismiss Plaintiff's

19

infringement claims against the accused YouTube website.

20

## II.     BACKGROUND

21

### A.     Plaintiff Amended The Complaint To Allege Indirect Infringement After Google Provided Notice Of Plaintiff's Defective Direct Infringement Allegations

22

23

Plaintiff U.S. Patent No. 7,679,637 LLC ("Plaintiff") filed its complaint on April 18, 2023

24

25

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 2
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

only asserting direct infringement of system claims.  (ECF 1 ¶ 21).  On July 13, 2023, Google requested that Plaintiff dismiss the complaint in view of its failure to plead direct infringement of the asserted system claims.  Google pointed out that Plaintiff affirmatively pleaded that third parties supply an essential component of the claimed system—the encoder—such that the complaint failed to plausibly allege that Google controlled and benefited from the whole accused system as required to state a claim for direct infringement of a system claim.  In response, Plaintiff filed the FAC on July 31, 2023.  (ECF 25).  In the alternative to direct infringement, Plaintiff now asserts that Google indirectly infringes by inducement as of the filing of the complaint should the Court find that Google does not control the third-party encoders.  (ECF 25-1 at 2-3).

### B.    The '637 Patent Acknowledges That The Claimed Invention Merely Applies Conventional "Time-Shifting" To The Field Of Web Conferencing

The '637 patent is titled "Time-Shifted Web Conferencing" and generally relates to "web conferencing systems."  ('637 patent, ECF 1 at 13-25).  The '637 patent explains that "time-shifting" is simply the recording and playback of recorded content.  (*Id.*, 3:61-64; 11:37-41).  The '637 patent acknowledges that "time-shifting" was already well-known in the industry before the claimed invention, such as with the recording and playback of recorded content using VCRs and DVRs.  (*Id.*, 3:3-18).

The '637 patent explains that the claimed invention is directed to "the application of time-shifting presentation techniques to the field of web conferencing."  (*Id.*, 2:33-5).  Specifically, the patent describes a purported problem with *web* conferencing systems around October 2006[2] where participants who joined a meeting late could not "observe a previously recorded part of the meeting

---

[2]    The '637 patent claims priority to U.S. Provisional Application 60/855,076 filed on October 28, 2006.  Google reserves all rights as to whether this priority date is proper.

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 3
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

while the meeting is still in progress." (*Id.*, 2:50-54).  The patent purports to solve this problem of web conferencing by allowing for the "playback of recorded content" (*i.e.*, time-shifting) both during and after the "live meeting." (*Id.*, 2:52, 3:28-29).

C.   **The '637 Patent Discloses Conventional "Time-Shifting" And "Audio Time-Scale Modification" Technologies That Existed Before The Claimed Invention**

The '637 patent provides the following examples of conventional "time-shifting"—recording and playing back recorded content during and after a live broadcast—that existed before the claimed invention:

**Conventional "Time-Shifting" Technology**

In a separate field, ***commercial digital video recording*** *services* and associated equipment, such as one sold under the trademark TiVo by TiVo, Inc, Alviso, Calif., have paved the way in ***providing live time-shifting capabilities*** for television viewing and have begun to affect consumers' expectations. Prior to digital video recorders (DVRs), consumers had limited control over their viewing experience. Consumers could either watch a television show in real-time, or with devices like video cassette recorders they could watch a recorded version of the show after the whole show had finished.

***DVRs have empowered consumers by allowing them to time-shift real-time** television content*.

(*Id.*, 3:7-18).[3]

The '637 patent acknowledges that "with devices like ***video cassette recorders" (VCRs)***, consumers already "could watch a recorded version of the show after the whole show had finished." (*Id.*, 3:13-16).  These conventional "time-shifting" technologies—like VCRs and DVRs—include "the ability to have the participant perform time-shifting actions such as pausing, resuming, and seeking backward or forward" and "changing the rate at which content is displayed,

---

[3]     Emphasis added and citations omitted unless noted otherwise.

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 4
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

i.e., allow the participant to observe at slower than or faster than real-time." (*Id.*, 8:9-14).

Given these conventional time-shifting technologies, the '637 patent explains that the claimed invention can just as easily be implemented using telephones, which "may be a more suitable device than a computer":



(*Id.*, 11:1-3; Fig. 5).

The '637 patent explains that these conventional time-shifting technologies also work with existing "audio time-scale modification techniques," which allow users "to speed up or slow down audio playback" while "maintaining the … audio quality." (*Id.*, 3:25-31; 9:4-13).  The patent provides various examples of conventional "audio time-scale modification" technologies, including ***"voice-mail and dictation tape playback"*** and ***open-source software already available to the public***:

### The '637 Patent Identifies Several Examples of <u>Conventional "Audio Time-Scale Modification" Software</u>

A point of interest is the audio time-scale modification component
212. This component includes logic for manipulating the time-scale

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

of a stream of audio while maintaining the perceived aspects of audio quality. ***Example algorithms include the WSOLA algorithm introduced by Verhelst and Roelands, and available at http://ieeexplore.ieee.org/xpl/freeabs _all.j sp?arnumber=319366, or related algorithms.***

\*       \*       \*

The first embodiment uses ***Olli Parviainen's open-source SoundTouch library, available at http://www.surina.net/soundtouch/.***

\*       \*       \*

For example, with ***protocols like the real-time transport protocol (http:/ /tools.ietf.org/html/rfcl 889)***, the server simply continues to send frames to clients and some separate quality of service mechanism informs the server if the frames are reaching their destination. This can lead to performance improvements, including lowered latency. ***An embodiment could embrace this strategy***.

(*Id.*, 3:26-32; 9:4-13;10:44-52).

**D.     The '637 Patent Acknowledges That The Claimed Web Conferencing System Recites Generic Computer Components**

Plaintiff asserts claims 2-5 and 7-9 ("asserted claims")—which are all system claims.  (ECF 25 ¶¶ 44-91).  All asserted claims depend from either independent claim 2 or 7.  Claims 2-5 are representative and recite three or more of the following components of the claimed software system.  As shown below, the '637 patent acknowledges that all of these components merely perform generic functions of a computer and already existed before the claimed invention:

| Claimed Computer Component | Admitted Generic or Conventional Functionality Existing Before The Claimed Invention |
|---|---|
| "first client application" | "Client applications … run on participants' computers. The client application captures the streams that the participant chooses to share (if any). The client application ***sends these streams*** to server 110. The client application also ***receives the streams*** from the server that the participant chooses to observe (if any) and ***displays them***…. ***In this way a participant can use the client application to share and/or receive.***" ('637 patent, 5:10-20). |
| "second client application" | |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| | |
|---|---|
| | "*[A]pplications could be provided for different operating systems or platforms.* For example, in a *Microsoft Windows environment* a native application might be required for full capabilities, such as sharing screen data, but an *Adobe Flash application* might be able to observe and share some types of data/" (*Id.*, 10:24-29). |
| "server application" | "When server 110 receives a frame, it *simply stores the frame and its accompanying information.*" (*Id.*, 7:20-21). |
| "storage means for recording" | "The way that frame data and associated information is stored and retrieved is *open to alternatives.*" (*Id.*, 10:11-12). "The frame data could also be *stored in a database, on a network attached storage device, or the like.*" (*Id.*, 10:16-18). |
| "audio time scale modification component" | Existing "[a]udio time-scale modification techniques have been applied to *applications such as voice-mail and dictation tape playback, post synchronization of film and video, and playback of recorded content*. These techniques have also been employed … for streaming audio (to speed up or slow down audio playback to maintain an optimal buffer length)." (*Id.*, 3:25-33). "In yet another field, *algorithms have been devised to timescale manipulate audio content with high fidelity reproduction*. These algorithms allow an audio stream to be played back at a faster or slower rate while maintaining other perceived aspects of the audio, such as timbre, voice quality, and pitch." (*Id.*, 3:19-24). Examples of existing "audio time-scale modification" components that "*maintain[] the perceived aspects of audio quality.*" (*Id.*, 9:3-7): <br> • "*WSOLA algorithm* introduced by Verhelst and Roelands … available at http://ieeexplore.ieee.org/xpl/freeabs_all.jsp? arnumber =319366, or related algorithms" (*id.*, 9:8-10); <br> • "*Olli Parviainen's open-source SoundTouch library*, available at http://www.surina.net/soundtouch/" (*id.*, 9:11-13); <br> • "*[R]eal-time transport protocol* (http:/ /tools.ietf.org/html/rfcl 889)" (*id.*, 10:46-48). |

All asserted claims require at least a "first client application" for the presenter to share "computer screen video"/"computer screen video data." ('637 patent, claims 2 and 7). The '637 patent distinguishes sharing of "computer screen video" from other types of video, like "camera video." (*Id.*, 5:25-28; 5:53-55).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### E. The '637 Patent's Purported Problem And Solution Were Well-Understood Over A Decade Before The Patent

The idea to which the '637 patent is directed—time-shifting a live presentation—and the purported problems it was addressing were already known over a decade before pre-web technology.  For example, U.S. Patent No. 5,692,213 ("'213 patent") states nearly the identical problem and solution as the '637 patent, *but 12 years earlier*:

> [T]wo problems . . . can occur with live-transmission multimedia presentations.  The first problem arises when a person is viewing the meeting from the beginning and wants to go back to review something while the meeting is in progress without missing anything. A second problem is where a person wants to join a meeting in progress and needs to be brought up-to-date with what has already transpired.

(Ex. 1, 1:36-43).[4]  That '213 patent goes on to explain the '637 patent's same purported solution of "provid[ing] for a portion of a live multimedia presentation to be *recorded and played back at an accelerated speed* until the user catches up to the real-time presentation" wherein "the *audio is accelerated . . . speech compression algorithms that retain the pitch of the audio*" dating back to the 1980s.  (*Id.*, 2:44-50; 1:56-58; 7:2-13).

### F. The FAC Continues To Point To Third-Party Encoders For The Accused YouTube Website

The FAC accuses three products: (1) YouTube's live streaming functionality on YouTube's website, (2) the YouTube App, and (3) Google Meet live streaming on YouTube.  (ECF 25-1 at 1).  For YouTube's live streaming functionality, the FAC provides a link to an explanation

---

[4]    Courts take judicial notice of U.S. patents in Rule 12(b)(6) motions.  *IBM v. Zillow*, 2022 WL 704137, *5 (W.D. Wa. 2022) (dismissing complaint under § 101 because "[f]or purposes of assessing (at Alice Step Two) . . . *the Court must consider any prior art or other extrinsic evidence proffered by the parties regarding what was 'well-understood, routine, or conventional'* at the time of the invention").  Google respectfully requests that this Court take judicial notice of the '213 patent (Ex. 1) for these same reasons.  Ex. 1 is a true and correct copy of the '213 patent.

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 8
(2:23-cv-00592-JHC)

of third-party encoders on YouTube's Help Center.  (ECF 25 ¶ 30).  As discussed in detail below, the FAC expressly links to YouTube's statement that ***"[n]one of these [encoders] are made by YouTube"*** and users must "evaluate the products and decide which option makes the most sense for you or your business."  (Ex. 2, FAC's link at ¶ 30, https://support.google.com/youtube/answer/2907883?hl=en&ref_topic=9257984&sjid=7224752 144479992201-NA#zippy=).

## III.   LEGAL STANDARD

Rule 12(b)(6) requires dismissal for failing to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  "Where, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim."  *Bot M8*, 4 F.4th at 1354.  On a Rule 12(b)(6) motion, the Ninth Circuit instructs that "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (dismissing complaint because documents "expressly mentioned in the amended complaint" but "not physically attached to the pleading"); *Warren v. Fox Family* , 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (dismissing complaint because "documents on which the complaint 'necessarily relies' and whose 'authenticity . . . is not contested'").  Furthermore, "[i]n general, websites and their contents may be judicially noticed."  *Threshold Enters. v. Pressed Juicery*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *Caldwell v. Caldwell*, 2006 WL 618511, at *4 (N.D. Cal. 2006) (same).

## IV.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE '637 PATENT CLAIMS INELIGIBLE SUBJECT MATTER UNDER § 101

The '637 patent uses technical jargon like "time-shifting" and "time-scale modification."

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

But the claim language and specification confirm that this technical jargon and the '637 patent

recite nothing more than the abstract idea of playing back recorded content using conventional

3

computer technology.  The asserted claims therefore fail both steps of the Supreme Court's *Alice*

4

test and should be dismissed with prejudice.

5

*Alice***'s Two-Step Test**.  Section 101 defines subject matter that is eligible for patent

6

protection as "any new and useful process, machine, manufacture, or composition of matter, or

7

any new and useful improvement thereof."  35 U.S.C. § 101.  However, patents that claim "laws

8

of nature, natural phenomena, and abstract ideas are not patentable" because they are "the basic

9

tools of scientific and technological work."  *Alice Corp. v. CLS Bank*, 573 U.S. 208, 216 (2014).

10

"Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts."  *SAP v.*

11

*InvestPic*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

12

"Like other legal questions based on underlying facts, this question may be, and frequently

13

has been, resolved on a Rule 12(b)(6) or (c) motion."  *Id.*  Where "there are no factual allegations

14

that, taken as true, prevent resolving the eligibility question as a matter of law," it is proper to

15

dismiss claims under § 101 at the pleading stage.  *Aatrix Software v. Green Shades Software*, 882

16

F.3d 1121, 1125 (Fed. Cir. 2018); *Secured Mail v. Universal Wilde*, 873 F.3d 905, 912 (Fed. Cir.

17

2017) (holding claims ineligible "based on intrinsic evidence from the specification without need

18

for extraneous fact finding outside the record").  This is such a case.

19

In *Alice*, the Supreme Court established the two-step test for § 101 patent eligibility.  573

20

U.S. at 217.  Step 1 asks whether the claim is "directed to" an abstract idea.  *Id.*  Applying *Alice*,

21

the Federal Circuit explains that abstract ideas include "long-prevalent practice[s]" and ideas or

22

concepts "long-practiced in our society."  *Intellectual Ventures I v. Symantec*, 838 F. 3d 1307,

23

24

25

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 10
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1314 (Fed. Cir. 2016); *Capital One*, 792 F.3d at 1366.  ***An "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."*** *Id.*

Step 2 asks whether the elements of the claim "both individually and as an ordered combination" supply an "inventive concept" that transforms the abstract idea into a patent-eligible invention.  *Id.*  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application."  *BSG v. Buyseasons*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).  The '637 patent fails both steps.

**A.    Step 1:  The '637 Patent Claims The Abstract Idea Of Playing Back Recorded Content**

Step 1 examines "what the patent asserts to be the focus of the claimed advance over the prior art." *Hawk Tech. v. Castle Retail*, 60 F.4th 1349, 1356 (Fed. Cir. 2023).  Here, the '637 patent claims "a multi-part software program."  '637 patent, 4:58.  For software, Step 1 asks whether the patent claims "a ***specific*** improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function."  *TecSec v. Adobe*, 978 F.3d 1278, 1293 (Fed. Cir. 2020).  This "***specificity [is] required*** to transform a claim from one claiming only a result"—which is an abstract idea—"to one claiming a way of achieving it."  *SAP*, 898 F.3d at 1167.

**1.    The Specification Confirms That The Asserted Claims Merely Recite The Abstract Idea Of Playing Back Recorded Content**

The '637 patent purports to solve a problem where participants joining a meeting late could not "observe a previously recorded part of the meeting while the meeting is still in progress." (*Id.*, 2:50-54).  This is akin to the "nontechnical human activity of passing a note to a person who is in the middle of a meeting or conversation" to bring the person up to speed.  *Interval Licensing v.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*AOL*, 896 F.3d 1335, 1344 (Fed. Cir. 2018).  The Federal Circuit finds this same "act of providing

someone an additional set of information without disrupting the ongoing provision of an initial set

of information is an abstract idea." *Id.*

The '637 patent describes five purported "advantages" of the claimed invention—all of

which further confirm the abstract idea of playing back recorded content:

> (1)  "a participant can enter a meeting after it has begun and either begin observing the live content or rewind and see the content that they missed";
>
> (2)  "a participant can observe a meeting in real-time and be able to pause the content to deal with an interruption";
>
> (3)  "a participant observing a meeting can easily replay an interesting segment";
>
> (4)  "a participant can observe a live meeting at slower than real-time to more easily digest the content";
>
> (5)  "a participant observing on a delay (from joining late, pausing, replaying, etc .... ) can observe the content faster than real-time."

('637 patent, 3:33-50).

The first three purported advantages are akin to the "nontechnical human activity of passing

a note to a person who is in the middle of a meeting or conversation" to bring the person up to

speed. *Interval*, 896 F.3d at 1344.  These three "advantages" merely automate the manual process

of time-shifting by recording and playing back a live broadcast using a traditional VCR.  "[M]ere

automation of manual processes using generic computers does not constitute a patentable

improvement in computer technology" under § 101.  *IBM v. Zillow*, 50 F.4th 1371, 1378 (Fed. Cir.

2022).

Courts find similar processes that merely "amount[] to replacing a live broadcast with what

is akin to—in archaic terms—inserting a video tape into a VCR and pressing 'play'" to be abstract.

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 12
(2:23-cv-00592-JHC)

*RaceTech v. Ky. Downs*, 167 F.Supp. 3d 853, 866 (W.D. Ky. 2016) (dismissing claims reciting playback of recorded live horse races as akin to using VCR to record live broadcast); *CG Tech. v. William Hill U.S.*, 404 F. Supp. 3d 842, 850 (D. Del. 2019) ("abstract idea of managing a betting market during a live sporting event" as akin to using VCR to record live broadcast).

That is all the '637 patent claims—merely automating the manual process of time-shifting by replaying recorded content using a VCR in the context of web conferencing.  It is well settled that "merely implement[ing] an old practice in a new environment" is patent ineligible. *FairWarning IP v. Iatric*, 839 F.3d 1089, 1094 (Fed. Cir. 2016).  "Mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology" but rather an "abstract idea[] that use[s] computers as tools." *Credit Acceptance v. Westlake*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

For the fourth and fifth purported advantages of playing back content at "slower" or "faster" speeds, the '637 patent acknowledges that this "time-scale modification" technology was already well-known before the claimed invention.  ('637 patent, 3:19-33; *supra* Section II.B).  The patent describes conventional "[a]udio time-scale modification techniques" that "have been applied to ***applications such as voice-mail and dictation tape playback, post synchronization of film and video, and playback of recorded content***." (*Id.*, 3:25-33).  The patent also describes existing "commercial digital video recording" ("DVR") technology "such as one sold under the trademark TiVo" that "paved the way in providing live time-shifting capabilities for television viewing." (*Id.*, 3:7-19).  Such "DVRs have empowered consumers by allowing them to time-shift real-time television content." (*Id.*).

All purported advantages described in the '637 patent are nontechnical human or

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 13
(2:23-cv-00592-JHC)

conventional activities, like recording and playing back content using VCRs or DVRs (which itself

is a digital form of VCRs).  The claim language read in light of the specification therefore confirms

that the asserted claims are merely directed to the abstract idea of playing back recorded content

applied to the Internet and therefore fail Step 1.

### 2. The Asserted Claims Use Functional Language That Recites The Abstract Idea Of Playing Back Recorded Content

As shown below, representative claims 2-5 merely recite a desired result or function rather

than a specific, innovative way to achieve the result or function:

| Claim 2 | Results-Based Functional Claiming Without A Specific Way To Achieve The Result |
|---|---|
| 2.  A web conferencing system comprising: | <ul><li>Merely limits abstract idea to web.</li><li>***"[M]erely limiting the field of use of the abstract idea to a particular existing technological environment [i.e., web conferencing] does not render the claims any less abstract."*** *Affinity Labs v. DirecTV*, 838 F.3d 1253, 1258-59 (Fed. Cir. 2016).</li></ul> |
| (a) a ***first client application*** allowing at least one presenting participant ***to share computer screen video***, | <ul><li>Does not recite how to achieve result of "shar[ing] computer screen video," much less recite a technological improvement or innovative way of doing so.</li><li>Instead, merely recites ***generic computer function of transmitting content***.</li></ul> |
| (b) said first client application also being arranged to allow said presenting participant ***to share at least one data stream selected from*** the group consisting of chat data, documents, web pages and white-boarding session, | <ul><li>Does not recite how to achieve result of "shar[ing] at least one data stream" of "chat data, documents, web pages and white-boarding session," much less recite a technological improvement or innovative way of doing so.</li><li>Instead, merely recites ***generic computer function of transmitting particular content***.</li><li>Limiting information "to particular content…does not change its character as information … as within the realm of abstract ideas." *Elec. Power v. Alstom*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).</li></ul> |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| | |
|---|---|
| (c) **storage means for recording** said computer screen video and said data stream, and | • Does not recite how to achieve result of "stor[ing]" or "recording," much less recite a technological improvement to or innovative way of doing so.<br><br>• Instead, merely recites ***generic computer functions of storage and recording.*** |
| (d) a **second client application allowing** at least one observing participant **to sense said computer screen video and said data stream live**, | • Does not recite how to achieve result of "sens[ing] said computer screen video and said data stream live," much less recite a technological improvement or innovative way of doing so.<br><br>• Instead, merely recites ***generic computer function of receiving live content***.<br><br>• The Federal Circuit found similar claim language ***"receiving … [a] real-time media stream"*** to be directed to an abstract idea. *Two-Way Media v. Comcast Cable*, 874 F.3d 1329, 1340 (Fed. Cir. 2017). |
| (e) said second client application also being arranged to allow said observing participant to **selectively sense a previously presented and recorded part** of said computer screen video and said data stream **while said presenting participant is sharing** a current part of said computer screen video and said data stream, | • Does not recite how to achieve result of "selectively sens[ing] a previously presented and recorded part … while said presenting participant is sharing…," much less recite a technological improvement or innovative way of doing so.<br><br>• Instead, merely recites ***generic computer function of receiving recorded content during live presentation***.<br><br>• The Federal Circuit found similar language ***"receiving and transmitting [a] real-time media stream … and recording certain information about the stream"*** to be abstract. *Id.* |
| (f) said second client application also being arranged **to** allow said observing participant to **selectively sense a previously presented and recorded part** of said computer screen video and said data stream **after said presenting participant has finished sharing** a said computer screen video and, said data stream | • Does not recite how to achieve result of "selectively sens[ing] a previously presented and recorded part … after…finished sharing…," much less recite a technological improvement to or innovative way of doing so.<br><br>• Instead, merely recites ***generic computer function of receiving recorded content after a live presentation***.<br><br>• The Federal Circuit found similar functional language of ***"receiving and transmitting [a] real-time media stream … and recording certain information about the stream"*** to be abstract. *Id.* at 1340. |

| | |
|---|---|
| whereby said web conferencing system is able to *simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts* of said computer screen video and said data stream. | • Does not recite how to achieve result of "simultaneously record[ing]…and…sens[ing] current and previously presented parts," much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer functions of recording and transmitting live and recorded content*.<br>• The Federal Circuit found similar functional language, *"receiving and transmitting [a] real-time media stream … and recording certain information about the stream,"* to be abstract. *Id.* at 1340. |

As shown above, no limitation actually recites a specific technological improvement in how the "computer screen video" is shared, recorded, stored, or received during or after a live presentation.  Instead, the claim recites a generic function or result "that itself is the abstract idea." *Two-Way*, 874 F.3d at 1337.  The Federal Circuit finds similar language of *"receiving and transmitting [a] real-time media stream … and recording certain information about the [real-time] stream"* to be functional and therefore abstract.  *Id.* at 1340-41.  The fact that these recited functions occur during a live broadcast does not change the generic and abstract nature of the claim. "[N]othing in these claims requires anything other than conventional computer and network components operating according to their ordinary functions."  *Id.* at 1341;  *Elec. Power*, 830 F.3d at 1351 (finding collecting, recording, and displaying data in "real-time" held abstract).

In *Skillz Platform*, the court found similar claims directed to a "video replay engine" for recording a user's screen during live gameplay and allowing replay were drawn to the "abstract idea of storing, communicating, and displaying data."  2022 WL 783338, *21 (N.D. Cal. 2022).  The same result is warranted here.  "Because the claims are directed to broad functions— 'generating,' 'recording,' 'capturing,' and 'broadcasting'—without any technological improvement for performing those functions, they are not directed to a specific technological

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

improvement." *Id.*

Representative claim 3 likewise lacks specificity and uses pure functional claiming:

| Claim 3 | Results-Based Functional Claiming Without A Specific Way To Achieve The Result |
|---|---|
| 3.  The system of claim 2 wherein: | |
| (a) said *first client application* allows said presenting participant to *share audio data* | • Does not recite how to "share audio data," much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer function of transmitting content*. |
| *(b) said storage means records said audio data, and* | • Does not recite how to "store" or "record[] said audio data," much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer functions of recording and storage*. |
| (c) said second client application allows said observing participant to *sense said audio data*. | • Does not recite how to "sense said audio data," much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer function of receiving content*. |

Nowhere does claim 3 recite a specific technological improvement or innovative way  to share, record, store, or receive audio data.  Indeed, the functions of claim 3 can be performed using a conventional tape recorder that records and plays back audio or a radio station recording a broadcast.  Such software claims with brick-and-mortar analogs are abstract and fail Step 1.  *Symantec*, 838 F.3d at 1317 (claimed software with "brick and mortar" analog to post office held abstract).

Stripped of their technical jargon, representative claims 4-5 are likewise functional and abstract:

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

| Claim 4 | Results-Based Functional Claiming<br>Without A Specific Way To Achieve The Result |
|---|---|
| 4.  The system of claim 3 wherein: | |
| (a) said web conferencing system *includes an audio time-scale modification component*, | • '637 patent acknowledges that recited "audio time-scale modification component" is conventional technology.  (*Supra* Section II.B).<br>• Does not recite how to achieve "audio time-scale modification," much less a technological improvement to or innovative way of doing so. |
| (b) said second client application also *allows said participant to observe said computer screen video, said data stream, and said audio data at an adjustable rate of speed*, | • Merely recites generic time-shifting technology as admitted in specification (*i.e.*, generic function of playing back in slow motion or by fast forward, as provided by conventional time-shifting technologies like VCRs and DVRs).  (*Id.*).<br>• Does not recite how to achieve an "adjustable rate of speed," much less a technological improvement or innovative way of doing so. |
| whereby said audio time-scale modification component *maintains substantially consistent perceived aspects of audio quality at a plurality of chosen playback rates of speed*. | • Merely recites generic audio time-scale modification technology as admitted in specification (*i.e.*, generic function of playing back audio at different rates of speed with consistent quality, as provided by conventional voicemail or audio dictation services).  (*Id.*).<br>• Does not recite how to "maintain[] substantially consistent perceived aspects of audio quality at a plurality of chosen playback rates of speed," much less a technological improvement or innovative way of doing so. |
| Claim 5 | Results-Based Functional Claiming<br>Without A Specific Way To Achieve The Result |
| 5.  The system of claim 4 wherein said second client application also allows said observing participant to *perform time-shifting operations comprising pausing, resuming and seeking*. | • Merely recites generic time-shifting technology as admitted in the specification (*i.e.*, generic functions of "pausing, resuming and seeking" provided by conventional VCRs and DVRs).  (*Id.*).<br>• Does not recite how to achieve "pausing, resuming and seeking," much less recite a technological improvement or innovative way of doing so. |

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 18
(2:23-cv-00592-JHC)

Claims 4 and 5 claim nothing more than the generic functions of time-shifting itself (pause, resume, seeking forward and backward) and audio time-scale modification itself (playback at different rates with consistent quality). The '637 patent admits these functions are generic time-shifting and audio time-scale modification technologies present in conventional VCRs, DVRs, voicemail, and open source software. (*Id.*, 3:7-18, conventional time-shifting using VCRs and DVRs; 3:26-32, 9:4-13, 10:44-52, conventional audio time-scale modification using voicemail, dictation, and open source).

Like the other claims, claims 4 and 5 do not recite a specific or innovative way to achieve the claimed results of time-shifting and audio time-scale modification. Nowhere do they recite how the goals of "adjustable rate of speed," "substantially consistent perceived aspects of audio quality," or "pause, resume and seek" are achieved. The claims do not recite any parameters for audio time-scale modification or how the audio data should be manipulated. These claims lack "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP*, 898 F.3d at 1167.

Nor can Plaintiff point to source code in the specification to avoid the functional and abstract nature of the claim language itself. The Federal Circuit instructs that "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims." *ChargePoint v. SemaConnect*, 920 F.3d 759, 769 (Fed. Cir. 2019). "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on ***the specification must always yield to the claim language*** in identifying that focus." *Id.* at 766.

"Stripped of the technical jargon that broadly describes non-inventive elements," claims

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

2-5 only cover the abstract idea of recording and playing back recorded content. *Smart Sys. v. Chi. Transit*, 873 F.3d 1364, 1371 (Fed. Cir. 2017). The asserted claims therefore fail Step 1.

**B.    Step 2: The Individual Elements And Ordered Combination Function In A Conventional Way And Do Not Supply An Inventive Concept**

**1.    The '637 Patent Acknowledges That Each And Every Claimed Component Is Conventional**

The Step 2 inquiry shifts from the overall focus of the claim to "the elements of each claim both individually and as an ordered combination." The claimed elements must recite an "inventive concept" that transforms the abstract idea into "a patent-eligible application." *Alice*, 573 U.S. at 217. This transformation requires more than "well-understood, routine, conventional activit[ies]." *Id.* at 225. That is all the '637 patent recites.

As the specification admits, none of the recited components in the asserted claims is new. The '637 patent acknowledges that "[f]or the most part, the workings of these components resemble those of similar components in ***existing web conferencing or audio video display applications***," including traditional telephone networks, VCRs, and DVR technology offered by companies such as TiVo and others. (*Id.*, 8:35-37; 3:7-16; Fig. 5). The patent specifically acknowledges that each of these components was already well-understood, routine, or conventional:

| Claimed Computer Component | Admitted Generic or Conventional Functionality Existing Before The Claimed Invention |
|---|---|
| "first client application" | "Client applications … run on participants' computers. The client application captures the streams that the participant chooses to share (if any). The client application ***sends these streams*** to server 110. The client application also ***receives the streams*** from the server that the participant chooses to observe (if any) and ***displays them***…. ***In this way a participant can use the client application to share and/or receive.***" (*Id.*, 5:10-20). |
| "second client application" | |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| | |
|---|---|
| | "*[A]pplications could be provided for different operating systems or platforms.* For example, in a *Microsoft Windows environment* a native application might be required for full capabilities, such as sharing screen data, but an *Adobe Flash application* might be able to observe and share some types of data" (*id.*, 10:20-29). |
| "server application"[5] | "When server 110 receives a frame, it *simply stores the frame and its accompanying information*" (*id.*, 7:20-21). |
| "storage means for recording" | "The way that frame data and associated information is stored and retrieved is *open to alternatives*" (*id.,* 10:11-12).<br><br>"The frame data could also be *stored in a database, on a network attached storage device, or the like*" (*id.,* 10:16-18). |
| "audio time scale modification component" | Existing "[a]udio time-scale modification techniques have been applied to *applications such as voice-mail and dictation tape playback, post synchronization of film and video, and playback of recorded content*. These techniques have also been employed … for streaming audio (to speed up or slow down audio playback to maintain an optimal buffer length)" (*id.*, 3:25-33).<br><br>"In yet another field, *algorithms have been devised to timescale manipulate audio content with high fidelity reproduction*. These algorithms allow an audio stream to be played back at a faster or slower rate while maintaining other perceived aspects of the audio, such as timbre, voice quality, and pitch" (*id.*, 3:19-24).<br><br>The '637 patent describes existing "audio time-scale modification" components that "*maintain[] the perceived aspects of audio quality,*" including examples of open source software that were already available (*id.*, 9:3-13; 10:44-53). |

Nothing in the claims, in view of the specification, requires anything other than off-the-shelf, conventional computer technology for recording, storing, and playing back content. That is so even for the claimed "audio time-scale modification"—which the '637 patent acknowledges already existed  with conventional, open source software.  (*Id.*, 9:4-10 (open source software

---

[5]     Claims 2-5 are representative because they recite substantially similar limitations and are drawn to the same abstract idea as claims 7-9 with claims 7-9 reciting a "server application." As discussed above, the '637 patent acknowledges that the "server application" performs generic functions and therefore this limitation does not substantially change the character of claims 7-9 under *Alice*.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   available at "http://ieeexplore.ieee.org/xpl/freeabs_all.jsp? arnumber =319366, or related

2   algorithms"); 9:11-13 ("Olli Parviainen's open-source SoundTouch library" available at

3   http://www.surina.net/soundtouch/"); 10:44-52 ("real-time transport protocol available at http:/

4   /tools.ietf.org/html/rfcl 889").

5        Nor can Plaintiff rely on source code from the specification to supply an inventive concept.

6   As discussed above, none of the asserted claims recite any code.  Such unclaimed features are

7   irrelevant to the *Alice* analysis.  The Federal Circuit is clear under § 101, "the specification cannot

8   be used to import details from the specification if those details are not claimed."  *ChargePoint*,

9   920 F.3d at 76.  Because the asserted claims only use admittedly well-understood and conventional

10  computer hardware and software to carry out the abstract idea of playing back recorded content,

11  the claims do not recite an inventive concept.

12        **2.      The Asserted Claims Recite A Conventional Ordering Of Steps**

13        Nor does the ordered combination of claim limitations transform them into substantially

14  more than the abstract idea itself. They use a conventional ordering of steps—first sharing content,

15  then recording and storing it, and then playing it back.  The claims use this conventional ordering

16  of steps with admitted conventional technology, including the "first" and "second client

17  applications," "storage means," "application server," and "audio time-scale component."  The

18  Federal Circuit instructs that "merely reciting an abstract idea performed on a set of generic

19  computer components" does  "not contain an inventive concept." *Two-Way*, 874 F.3d at 1339.

20  The asserted claims therefore fail to transform the abstract idea into a patent eligible invention.

21        That the claims are addressed to web conferencing technology does not transform them

22  either.  The specification acknowledges that known web conferencing systems "allow participants

23

24

25  GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 22
    (2:23-cv-00592-JHC)

1
2
3
4
5

to share content with and observe content … screen video data, camera video data, audio data (through computers and through telephones), chat data, documents, and the like" and that "many web conferencing systems can record the meeting."  ('637 patent, 2:39-43; 2:48-49).  The very idea to which the '637 patent is directed—time-shifting a live presentation—and the purported problems it addressed were already understood over a decade before with pre-web technology.

6
7
8
9
10
11
12
13

For example, the '213 patent "provide[d] for a portion of a live multimedia presentation to be recorded and played back at an accelerated speed until the user catches up to the real-time presentation" using "speech compression algorithms that retain the pitch of the audio" that themselves dated back to the 1980s. (Ex. 1, 2:44-50; 1:56-58; 7:2-13).  This patent's solution was addressed to the same "advantages" as the '637 patent.  (*Id.*, 1:36-43) ("a person … viewing the meeting from the beginning and wants to go back to review something while the meeting is in progress"; "a person wants to join a meeting in progress and needs to be brought up-to-date with what has already transpired").

14
15
16
17
18
19
20
21
22

Moreover, as discussed above, the asserted claims are entirely functional.  These are the very claims directed to "generalized steps to be performed on a computer using conventional computer activity" that  repeatedly fail under Step 2.  *Two-Way*, 874 F.3d at 1337, 1339 (finding functional claims fail Step 2 as "a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result"); *Elec. Power*, 830 F.3d at 1355 (finding functional claims fail Step 2 because "claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications" nor recite "any requirements for how the desired result is achieved"); *Clarilogic v. FormFree Holdings*, 681 F. App'x 950, 954-55 (Fed. Cir. 2017) (same).

23
24
25

Such claims that use "already available computers, with their already available basic functions" risk a monopoly on a concept and not a technological innovation.  *SAP*, 898 F.3d at 1169-1170.  This is the very class of claims § 101 was meant to exclude as claiming monopolies on concepts, not innovations.  For these reasons, the asserted claims of the '637 patent fail Step 2 and should be dismissed.

## V.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE FAC FAILS TO PLAUSIBLY  ALLEGE THAT GOOGLE "BENEFITS" OR "USES" THE ENTIRE CLAIMED SYSTEM

The Federal Circuit has squarely addressed what constitutes directly infringing "use" of a system claim under § 271(a):  "Direct infringement by 'use' of a claimed system requires use of each and every element of the system."  *Synchronoss Techs. v. Dropbox*, 987 F.3d 1358, 1369 (Fed. Cir. 2021).  This means "a person must ***control (even if indirectly) and benefit from each claimed component.***"  *Intellectual Ventures I v. Motorola Mobility*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).  Plaintiff has not pleaded either here.

### A.   The FAC Is Devoid Of Allegations That Google Benefits From Each Claimed Component

In *Grecia v. McDonald's*, the Federal Circuit affirmed the dismissal of Grecia's complaint because "Grecia failed to allege that McDonald's obtained a ***benefit from each and every claim element***."  724 Fed. Appx. 942, 947 (Fed. Cir. 2018).  There, the complaint "only identified a ***vague benefit*** to McDonald's in that it could use a token stored in metadata associated with a customer's primary account number with Visa."  *Id.*  The Federal Circuit found that "Grecia's recitation of general benefits to be equivalent to stating that McDonald's benefits from the claimed system as a whole—the argument we rejected in *Intellectual Ventures*."  *Id.*  "We therefore hold

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

that he has failed to state a claim upon which relief can be granted based on use of the claimed system under § 271(a)."  *Id.*

Plaintiff's allegations here are even more deficient than in *Grecia*.  Grecia still attempted to tie the defendant's alleged benefits to the claim elements.  Plaintiff has not pleaded any such thing here.  The FAC and accompanying claim chart are devoid of any allegations that Google benefits from each and every claim element.  Plaintiff merely makes the following conclusory statement about Google's ***overall*** ad revenue from YouTube:

> In addition to billions in ad-related revenue from YouTube, Google earns other revenue from YouTube, including YouTube Premium and YouTube TV subscriptions. Google included this revenue in a broader category called "other," which had revenues of $21.711 billion in 2020 and $28.032 billion in 2021. Google disclosed that the $6.3 billion increase from 2020 to 2021 "was primarily driven by YouTube non-advertising and hardware, followed by Google Play. Growth for YouTube non-advertising was primarily due to an increase in paid subscribers." Source: https://www.sec.gov/Archives/edgar/data/1652044/000165204422 000019/goog- 20211231.htm (pages 30, 33, and 34).

(ECF 25 ¶¶ 36, 35) (generic allegations about overall YouTube ad revenues from 10-K).  These generic allegations have nothing to do with the claim elements.

In affirming dismissal, the Federal Circuit in *Grecia* rejected such generic assertions of purported overall benefits to the defendant.  "The alleged benefit should be tangible, not speculative, and tethered to the claims."  724 Fed. Appx. at 948.  In *Intellectual Ventures*, the Federal Circuit rejected such "theories of indirect benefit [that] amount to mere speculation or attorney argument."  870 F.3d at 1331.  In *Traxcell*, the court rejected the conclusory allegation that Google "derives benefits from claim elements" where the only factual allegations were that by "performing the specifically identified functions of those wireless communication networks (e.g., communicate location of a wireless mobile communications device). Defendant obtains those

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

benefits by putting those functionalities into use, i.e. controlling them, as per the evidence charts mentioned above." *Traxcell v. Google*, 2022 WL 17072015, \*9 (N.D. Cal. 2022).

In these cases, the complaint pleaded more than Plaintiff has done here. The courts still found such allegations were insufficient to state a plausible claim for direct infringement of system claims. Here, the absence of any allegations of Google's purported benefit from each and every claimed element is reason alone to dismiss the direct infringement claims. With no plausible underlying claim for direct infringement, Plaintiff's indirect infringement claims also fail and should be dismissed.

### B.     Plaintiff Affirmatively Alleges The Opposite Of Control By Google For The Accused YouTube Website

"[A] patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Bot*, 4 F.4th at 1346 (affirming Rule 12(b)(6) dismissal because "factual allegations contradicted infringement" in claim charts attached to complaint). That is what Plaintiff has pleaded here regarding the accused YouTube website. As discussed above, all asserted claims require a "first client application" for the presenter "to share computer screen video." ('637 patent, 12:33-34 (claim 2); 13:21-23 (claim 7)). For the accused YouTube website, Plaintiff repeatedly points to a ***"third-party encoder"*** to "shar[e] computer screen video." **(**ECF 25-1 at 2, 7-8, 13-14). In addition, the FAC links to and incorporates an explanation of encoders from YouTube's Help Center. That same page of YouTube's Help Center provides an explanation of "how to stream using an encoder"—which expressly states that ***none of the encoders are made by YouTube***:

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 26
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## YouTube Live verified encoders

Here's a list of YouTube Live verified encoders. None of these products are made by YouTube. Make sure to evaluate the products and decide which option makes the most sense for you or your business.

Software encoders

Hardware encoders

Mobile encoders

(Ex. 2, FAC's link at ¶ 30).

Moreover, this same page submitted by Plaintiff in its FAC lists two dozen encoders offered by third parties. For example:

Software encoders



**AWS Elemental MediaLive**

AWS Elemental MediaLive is a broadcast-grade live video processing service, supporting live streaming all the way up to 4Kp60 HEVC.



**Cinamaker Director Studio**

(Mac & iOS)

The all-in-one multi-camera video recording, editing, and live streaming app. Include up to 8 local iPhones, digital cameras, and remote guests via Zoom in HD. Add overlays, graphics, audio, video, screens, and visual effects. Stream to YouTube, Zoom, RTMP. Save hours building your video library with the In-App Editor.

Mobile encoders



**AirServer**

Windows, Mac

Mirror your mobile device to YouTube.



PRISM Live Studio

iOS, Android

PRISM Live Studio is one of the most popular mobile apps optimized for IRL and gaming streaming. It is loved by streamers for its stable streaming quality and attractive features such as decoration and beauty effects, source overlay, and chroma key. All the features are given for no charge.

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 27
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(*Id.*).

As shown above, Plaintiff has pleaded the opposite of control by Google. Similarly in *Centillion*, the Federal Circuit determined that defendant did not control the accused system where defendant only offered "software and technical assistance" and ***"it is entirely the decision of the customer whether to install and operate this software on its personal computer*** data processing means." *Centillion Data v. Quest Commc'ns*, 631 F.3d 1279, 1287 (Fed. Cir. 2011). Again in *Traxcell*, the court dismissed the FAC because "Plaintiff's 'use' claim fails to allege how Google 'controls' each claim element." *Traxcell*, 2022 WL 17072015 at *3. "The ***FAC alleges that Google provides software that a user can configure to practice Claim 1*** . . . But, as in *Centillion*, ***that is insufficient to state a claim against the software provider.***" *Id.* That is all Plaintiff pleads here for the YouTube website and warrants the same result.

Even more compelling here, Plaintiff's own allegations show that Google does ***not*** "control the system as a whole" as required to state a plausible claim of direct infringement. *Centillion*, 631 F.3d at 1284. Instead, the FAC incorporates pages stating the opposite: that "***none of these products [i.e., the identified encoders] are made by YouTube.***" Plaintiff also incorporates pages pointing to dozens of third parties who supply the encoders needed for the "first client application . . . to share computer screen video" limitation. (ECF 25 at ¶ 30). These same pages

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

also state that it is the ***end user who "decide[s] which option makes the most sense for you or***

***your business"*** from these dozens of third party encoders.  (Ex. 2).  The Ninth Circuit has made

3

clear that such information "expressly mentioned in the [] complaint" is considered on Rule

4

12(b)(6) motions as within four corners of complaint.  *Branch*, 14 F.3d at 453-54 (dismissing

5

complaint based on documents "expressly mentioned in the amended complaint" but "not

6

physically attached to the pleading"); *Warren*, 328 F.3d at1141 n.5 (dismissing complaint under

7

Rule 12(b)(6) based on "documents on which the complaint 'necessarily relies' and whose

8

9

'authenticity . . . is not contested'").  Furthermore, "[i]n general, websites and their contents may

be judicially noticed." *Threshold*, 445 F. Supp. 3d at 146.

10

Accordingly, the FAC fails to plausibly allege that Google "controls" every element of

11

YouTube's website.  This is further reason to dismiss Plaintiff's infringement claims as to

12

YouTube's website.

13

## VI.    CONCLUSION

14

For these reasons, Google respectfully requests dismissal of the FAC with prejudice under

15

Section 101 or for failing to plausibly allege that Google benefits from or uses each and every

16

element of the accused system.

17

18

19

20

21

22

23

24

25

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 29
(2:23-cv-00592-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Dated:  August 21, 2023                    Respectfully submitted,

                                           By: /s/ Ryan J. McBrayer
                                               Ryan J. McBrayer, WSBA No. 28338
                                               PERKINS COIE LLP
                                               1201 Third  Avenue, Suite 4900
                                               Seattle, WA 98101-3099
                                               Telephone: 206.359.8000
                                               Facsimile: 206.359.9000
                                               Email: RMcBrayer@perkinscoie.com

                                               Michael C. Hendershot
                                               JONES DAY
                                               1755 Embarcadero Road
                                               Palo Alto, CA 94303
                                               Telephone: 650-739-3940
                                               Email: mhendershot@jonesday.com

                                               Rita J. Yoon
                                               JONES DAY
                                               555 California Street, 26th Floor
                                               San Francisco, CA 94104
                                               Telephone: 415-875-5816
                                               Email: ryoon@jonesday.com

                                               *Attorneys for Defendant Google LLC*


## CERTIFICATE OF COMPLIANCE

I certify that this motion contains 8,339 words in compliance with the Local Civil Rules.


DATED this 21st day of August 2023.

                                           /s/ Ryan J. McBrayer
                                           Ryan J. McBrayer

GOOGLE'S RULE 12(b)(6) MOTION TO DISMISS – 30
(2:23-cv-00592-JHC)