THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| U.S. PATENT NO. 7,679,637 LLC | CASE NO. 2:23-cv-00592-JHC |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S RULE 12(B)(6) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT |
| v. | |
| GOOGLE, LLC, | JURY DEMAND |
| Defendant. | NOTED ON MOTION CALENDAR: September 15, 2023 |
| | ORAL ARGUMENT REQUESTED |

## **TABLE OF CONTENTS**

I.      Introduction ................................................................................................. 1

II.     Background .................................................................................................. 3

        A.      Plaintiff's '637 Patent ..................................................................... 3

        B.      The Asserted Claims '637 Patent are Technical in Nature ............... 5

        C.      Google Does Not Address All Asserted Claims and Its Conclusory
                Argument that There Are 3 Representative Claims Fails.................... 7

        D.      Google's Own Patents ...................................................................... 8

III.    Legal Standards Relevant to Patent Eligibility .............................................. 8

IV.     Argument ..................................................................................................... 9

        A.      Google's Motion Must be Treated as a Motion for Summary
                Judgment ....................................................................................... 9

        B.      *Berkheimer* and *Aatrix* Require Denial of this Section 101 Motion to
                Dismiss ......................................................................................... 10

        C.      *Alice* Step One: The '637 Patent Claims Are "Directed To" Eligible
                Subject Matter................................................................................ 11

        D.      *Alice* Step Two:  Google's Argument about Functional Claiming
                Contravenes 35 U.S.C. § 112(6), Which Allows Functional Claiming,
                and Requires Claim Construction and Disputed Factual Issues .................. 14

        E.      The FAC Properly Alleges Both Direct and Indirect Infringement
                Allegations Added to the First Amended Complaint........................ 18

                1.      Google's Motion Ignores the Allegations in the Amended
                        Complaint ........................................................................... 18

                2.      The FAC's "Use" Allegations Conform with *Centillion* ..................... 21

V.      Conclusion ................................................................................................ 23

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## TABLE OF AUTHORITIES

CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018 ...................................................................10

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ..................................................................15

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)............................................................................. passim

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .................................................2, 8, 10, 11

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994) .........................................................................9

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) ...................................................................8

*Centillion Data Sys. v. Quest Commc'ns Int'l*,
  631 F.3d 1279 (Fed. Cir. 2011) ..................................................2, 3, 18, 22

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ............................................................5, 13

*Elec. Power v. Alstom*,
  830 F.3d 1350 (Fed. Cir. 2016) .................................................................15

*Grecia v. McDonalds*,
  724 F. App'x 942 (Fed. Cir. 2018) ............................................................23

*In re Hiniker Co.*,
  150 F.3d 1362 (Fed. Cir. 1998) ...................................................................1

*Interval Licensing v. AOL*,
  896 F.3d 1335 (Fed. Cir. 2018) .................................................................13

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ...................................................................8

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - ii
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ................................................................................................1

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011) ................................................................................................................10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ..............................................................................................15

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ..............................................................................................12

**STATUTES**

35 U.S.C. § 101 ................................................................................................................8, 10

35 U.S.C. § 112(6) ..................................................................................................................14

35 U.S.C. § 271(a) ..................................................................................................................21

35 U.S.C. § 282(a) ....................................................................................................................8

Fed. R. Civ. P 12(b)(6) ..........................................................................................................10

Fed. R. Civ. P. 12(d) ............................................................................................................2, 9

Fed. R. Civ. P. 32.1(d) ..........................................................................................................23

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - iii
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.      Introduction

This patent infringement case concerns a patent, No. 7,679,637, on technological improvements to a web-conferencing system that Jeffrey Kohler invented.  Plaintiff's first amended complaint ("FAC") explains that Google sometimes uses Mr. Kohler's specific inventions in its popular YouTube platform when that platform functions as a web conferencing system, consistent with the patent claims.

Google's motion summarizes the invention as "playing back recorded content" on the internet, but that summary both admits that the invention is rooted in technology and is an over-generalization of the invention. Dkt. #26, 11:19. A fairer summary recognizes both that the patent is very much technological in nature and that its claims have numerous specific limitations that Google's summary ignores.

In patent law, "the name of the game is the claim."  *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998).  The Federal Circuit has warned that Courts must "be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).  The '637 claims themselves demonstrate that this is not a patent that claims "playing back recorded content" in the context of the Internet.  Instead, Plaintiff's invention— as written for example in claim 2—is directed to: web-based conferences that use two different applications (one to stream the conference and the other to view it) and at least two different data streams that are both streaming live and being recorded such that a participant can time-shift the conference.  Certainly, Google would not agree that all playing back of recorded content on or through the web infringes Plaintiff's patent claims.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 1
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

As explained below, Google's subject-matter eligibility motion should be denied outright because the patent claims are not "directed to" any abstract idea and thus are subject-matter eligible under step one of the *Alice* framework. If the Court disagrees and reaches *Alice* step two, Google's motion should be denied at least because it is premature. Step two requires claim construction, fact finding, and credibility determinations, all issues that are inappropriate to resolve in this case on a purported motion to dismiss. *See* Ex. 5, Rule 56(d) Declaration of David Berten. Google's motion attaches documents outside the complaint, including Exhibit 1, a purported third-party prior art patent extending ten pages. This raises myriad factual issues and converts Google's motion to summary judgment under FRCP 12(d). Tellingly, Google's motion does not even mention, let alone explain, how deciding eligibility on a motion to dismiss in this case comports with the controlling *Berkheimer* decision. Google's motion should be denied in its entirety.

Google's second argument about *Centillion* also fails. Google omits that there are times when Google has made, offered for sale, and sold the entire infringing system: 100% end-to-end developed and produced by Google. This occurs, for example, when the YouTube app initiates a YouTube Live Stream and Google's YouTube platform streams it to users' computers. *E.g.*, FAC ¶¶ 25, 47, Ex. 1 to FAC.[1] And as alleged in the FAC, Google also screens and supports the use of third-party encoders when a Live Stream is initiated directly within the YouTube web-based platform (as opposed to the YouTube smartphone app). *E.g.*, FAC ¶¶ 26-31, 49-51, Ex. 1 to FAC. Google puts all of this varied technology in place, exercises control over it, and benefits from its

---

[1] Exhibit 1 to the FAC is a detailed claim chart explaining the various ways different combinations of Google's products work together in an infringing system. It is included here as Exhibit 1 as well for convenience.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 2
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

use; so even for an infringing combination using a third-party encoder, Google is responsible for the infringement under *Centillion. E.g.*, FAC ¶ 21.

## II.    Background

### A.    Plaintiff's '637 Patent

As Plaintiff pleads in FAC ¶ 10, the inventor, Jeffrey Kohler, has a B.S. in Computer Science and Engineering from Michigan State University and an M.B.A. from Purdue University, and worked for Microsoft for over 15 years.  He now works at Meta (Facebook). Mr. Kohler invented the technology in 2006 during a time when he did not work for Microsoft.

Mr. Kohler's invention was not a thought exercise or an empty assertion that something could be done on the internet. He built a working prototype, and his disclosure included a compact disc with over 40 software subroutines to "illustrate an implementation of the invention."  Ex. 2 at 1:14-2:27.   Google fails completely to address this extensive technical disclosure and how Mr. Kohler solved problems that arise from the way web-based conferencing works.  These are not generic computer components or pre-existing functions.

As stated in the '637, playing back of some recorded media was known *in other technical fields* prior to the invention, *e.g.*, digital video recorders (DVRs) like TiVo, which the patent correctly explains is in "a separate field" of "television viewing":

> *In a separate field*, commercial digital video recording services and associated
> equipment, such as one sold under the trademark TiVo by TiVo, Inc, Alviso, Calif.,
> have paved the way in providing live time-shifting capabilities *for television
> viewing* and have begun to affect consumers' expectations. Prior to digital video
> recorders (DVRs), consumers had limited control over their viewing experience.
> Consumers could either watch a television show in real-time, or with devices like
> video cassette recorders they could watch a recorded version of the show after the
> whole show had finished.

Ex. 2 at 3:7-16 (emphasis added).  Web conferencing systems, however, presented technical challenges that are different from television viewing, and Mr. Kohler's invention solved some of those technical issues, overcoming technological problems specifically arising in the realm of these web conferencing systems.

For example, unlike a self-contained DVR, web conferencing systems of the kind claimed in the invention involve at least two distinct applications: one used by the presenter and separate applications used by other participants.  The '637 patent expressly claims the use of two different applications.  *See e.g.,* Ex. 2, 12:33-44. Second, unlike TV, web conferencing systems of the kind claimed in the invention use more than one data stream.  The '637 patent expressly claims the use of distinct data streams. *See e.g.,* Ex. 2, 12:35-38.  These are only two examples of the way that web-based conferencing systems operate differently than DVRs, but they are sufficient to demonstrate that the existence of a device like a TiVo for televised content does not mean that that a TiVo could be used to record and playback web-based conferences.

The '637 explains that, unlike DVRs/TiVo with televisions, "current web conferencing systems are unable to enable participants to asynchronously observe a live meeting, i.e., observe a previously recorded part of the meeting while the meeting is still in progress." Ex. 2 at 2:51-54. The patent also explains how web conferencing systems make use of different streams of data and how a technique used in a different field can be applied to data streams in a web conference:

> In this system, a web conferencing session contains one or more streams. A stream is any type of data that a participant can share or observe. Examples of streams include screen video, camera video, audio (through computers and/or through telephones), documents, collaborative chat, or any other types of data involved in a web conferencing session.

> Streams are comprise[d of] a series of discrete frames. Frames are time dependent data. Examples of frames include a segment of audio, a single video image, etc. In the first embodiment each frame in a stream is given a sequential number. Frames

are given a timestamp that identifies when they occurred in the session. Frames are identified either as key frames, which can be interpreted independently of any other frames, or as delta frames which rely on previous frames.

This key and delta frame scheme is commonly used in the audio-visual field, but it can be applied to other types of streams as well. For instance a web page or document shared during a session can be represented as a key frame. Also a white-boarding session (where participants can annotate an image with virtual pens) can be represented as a sequence of frames (where a pen stroke can be a delta frame, etc.).

Ex. 2 at 5:23-44.

**B.      The Asserted Claims '637 Patent are Technical in Nature**

The FAC asserts that claims 2, 3, 4, 5, 7, 8, and 9 of the '637 patent are infringed.  Those claims are set forth below.  The claim language shows that they do not simply claim "playing back recorded content" and that the claims are "necessarily rooted in computer technology." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014):

2. A web conferencing system comprising:

(a) a first client application allowing at least one presenting participant to share computer screen video,

(b) said first client application also being arranged to allow said presenting participant to share at least one data stream selected from the group consisting of chat data, documents, web pages and white-boarding session,

(c) storage means for recording said computer screen video and said data stream, and

(d) a second client application allowing at least one observing participant to sense said computer screen video and said data stream live,

(e) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream while said presenting participant is sharing a current part of said computer screen video and said data stream,

(f) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said

computer screen video and said data stream after said presenting participant has finished sharing a said computer screen video and, said data stream

whereby said web conferencing system is able to simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts of said computer screen video and said data stream.

3. The system of claim 2 wherein:

(a) said first client application allows said presenting participant to share audio data

(b) said storage means records said audio data, and

(c) said second client application allows said observing participant to sense said audio data.

4. The system of claim 3 wherein:

(a) said web conferencing system includes an audio time-scale modification component,

(b) said second client application also allows said participant to observe said computer screen video, said data stream, and said audio data at an adjustable rate of speed,

whereby said audio time-scale modification component maintains substantially consistent perceived aspects of audio quality at a plurality of chosen playback rates of speed.

5. The system of claim 4 wherein said second client application also allows said observing participant to perform time-shifting operations comprising pausing, resuming and seeking.

7. A web conferencing system comprising:

(a) a first client application that allows at least one presenting participant to share data streams comprised of audio data and computer screen video data

(b) a second client application that allows at least one observing participant to sense said data streams

(c) a server application operatively connected to said first client application and to said second client application, said server application arranged to:

      i. receive said data streams from said first client application and record it in a storage device

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 6
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

ii. retrieve said data streams from said storage device and send it to said second client application

(d) a time-scale modification component operatively connected to said second client application which is able to maintain substantially consistent perceived audio quality at a plurality of playback rates

whereby said data streams from said first client application can be simultaneously recorded by and retrieved from said storage device, and said second client application allows said observing participant to sense said data streams in real-time, and said second client application also allows said observing participant to selectively sense a previously presented and recorded part of said data streams at a plurality of playback rates at the same time that said presenting participant is sharing a current part of said data streams and after said presenting participant has stopped sharing, and said observing participant will perceive substantially consistent audio quality.

8. The system of claim 7 wherein said data streams also include data selected from the group consisting of chat data, documents, web pages and white-boarding session.

9. The system of claim 8 wherein said second client application allows said observing participant to perform time-shifting operations comprising pausing, resuming and seeking said data streams.

## C.  Google Does Not Address All Asserted Claims and Its Conclusory Argument that There Are 3 Representative Claims Fails

Plaintiff asserts claims 2-5 and 7-9.  Plaintiff disagrees that any of these claims are representative of the other claims. Subject-matter eligibility must be addressed for each claim.

Google's motion acknowledges that there is no one representative claim, instead arguing that "Claims 2-5 are representative." Dkt. #26, 6. Google then purports to identify four computer components and asserts that each of claims 2-5 "recite three or more of the following components of the claimed software system." Dkt. #26, 6. But this is not how representativeness is determined; the question is whether each claim has distinctive claim limitations (*e.g.*, limitations not common to the other claims).  Google's motion wholly failed to address that question or establish that there are representative claims.  Because it does not address each claim, and instead erroneously relies

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 7
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

on purported representative claims (and does not even address claims 2, 3, 4 and 5), Google's motion must fail.

### D.      Google's Own Patents

Google has repeatedly sought, been awarded, and maintains numerous patents that include "playing back recorded content" or cover video conferencing systems.  A search on Google's own "Google Patents" website suggests that Google has applied for, been granted, or has obtained assignments for over 500 patents with a priority date after 2014 that mention "video conferencing." Google must believe its own patents, all applied for *after Alice* are subject matter eligible.  One of these patents, U.S. 9,549,152 entitled "Application Content Delivery to Multiple Computing Environments Using Existing Video Conferencing Solution" is attached as Exhibit 4 and serves as an example of the hundreds of patents Google has received in the same technical area as the invention. As explained in more detail below, the claims of Google's own subject matter eligible patents are similar in nature to the claims of the '637 patent at least to the extent they relate to "playing back recorded content," include what Google calls "functional claiming," and generally relate to use of computer technology to facilitate the playback.

## III.     Legal Standards Relevant to Patent Eligibility

In the Ninth Circuit, courts evaluating motions to dismiss must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See e.g., K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). Courts must presume patent claims to be valid and put the burden on the challenger to establish § 101 invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019); *Berkheimer*, 881 F.3d at 1368.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 8
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV.     Argument

### A.     Google's Motion Must be Treated as a Motion for Summary Judgment

Google's motion relies on material outside the complaint and other than the '637 Patent, including reliance on a third-party patent. Google's motion attempts to rely on its Exhibit 1, U.S. Patent No. 5,692,213, to establish that time shifting during a presentation (albeit not in the context of the web or web conferencing) was already known. *See* Mot. 8:1-15.

In its motion, Google cites *Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) for the proposition that a document is not "'outside' the complaint if the complaint specifically refers to the document and its authenticity is not questioned." Mot. 9:12-14. Google makes no allegation that its Exhibit 1 was in the complaint, and it was not. Following Rule 12(d), *Branch* makes clear that introducing this exhibit necessarily converts Google's motion to a motion for summary judgment as opposed to a motion to dismiss:

> "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). When "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion is to "be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." <u>Fed.R.Civ.P. 12(b)</u>. "However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios*, 896 F.2d at 1555 n. 19 (emphasis added).

*Branch v. Tunnell*, 14 F.3d 449, *453* (9th Cir. 1994).

To avoid this result, in footnote 4, Google purports to rely on *IBM v. Zillow Grp., Inc.*, No. C20-1130 TSZ, 2022 WL 704137, at *2 (W.D. Wash. Mar. 9, 2022), asking the Court to take judicial notice of the patent. Doing so would not resolve any of the issues. *IBM v. Zillow* does not suggest that material outside the pleading can or should be considered at the motion to dismiss stage; instead, it states the opposite:

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 9
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3

For purposes of assessing (at *Alice* Step Two) whether the "representative" claims set forth an "inventive concept," the Court must consider any prior art or other extrinsic evidence proffered by the parties regarding what was "well-understood, routine, or conventional" at the time of the invention. *See id.* at *5. Any material factual questions on this subject will preclude a dispositive § 101 ruling.

4   Google's substantive reliance on the '213 patent and unresolved disputes issues of fact must

5   convert the motion to one for summary judgment.

6

7   **B.   *Berkheimer* and *Aatrix* Require Denial of this Section 101 Motion to Dismiss**

8   It is well-recognized that "whether a claim recites patent eligible subject matter is a

9   question of law which may contain underlying facts." *Berkheimer*, 881 F.3d at 1368.  The

10  question of whether a claim element or combination of elements is well-understood, routine and

11  conventional to a skilled artisan in the relevant field is a question of fact. *Aatrix Software, Inc. v.*

12  *Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018*). Berkheimer* re-affirmed that

13  any fact that is pertinent to the invalidity conclusion must be proven by clear and convincing

14  evidence. *Id.* (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).  In *Berkheimer*,

15  the Federal Circuit concluded that "the district court erred in concluding there are no underlying

16  factual questions to the § 101 inquiry." The Federal Circuit has also held that patent eligibility can

17  be determined at the Rule 12(b)(6) stage "only when there are no factual allegations that, taken as

18  true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125.

19

20  Google has not and cannot prove by clear and convincing evidence that the claim elements,

21  both individually and collectively, were well-understood, routine, and conventional to a skilled

22  artisan at the time of the invention. Google's first attempt is its section dedicated to arguing that

23  "The '637 Patent Discloses Conventional 'Time-Shifting' And 'Audio Time-Scale Modification'

24  Technologies That Existed Before The Claimed Invention." Dkt. #26, 4.  The fact that individual

25  elements existed before the claim invention is not enough. *Berkheimer v. HP Inc.*, 881 F.3d 1360,

26

1369 (Fed. Cir. 2018) ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.").

Google's next argument is similarly flawed: "The '637 Patent Acknowledges That The Claimed Web Conferencing System Recites Generic Computer Components." Dkt. #26, 6. Google cherry-picks specific parts of claim elements from claims 2-5 and classifies them as "admitted generic or conventional functionality existing before the claimed invention." *Id.* Mere existence before the invention date is not enough to show that there is no issue of fact about whether the claims were well-understood, routine, and conventional. And the analysis must apply to the entire claim, not just the particular words that Defendant finds most generic.

The fact that Google had to split its "conventional" argument into two sections, one that addresses time-shifting and one that addresses web-conferencing, undermines its point and reinforces the fact that the claimed technology was not routine, conventional, or well-understood. Google did not even attempt to argue that the application of "time-shifting" or "audio time-scale modification" to web-conferencing systems was known, let alone routine and conventional. Without any evidence, Google's motion must fail.

## C. *Alice* Step One: The '637 Patent Claims Are "Directed To" Eligible Subject Matter

In *Alice Corp. v. CLS Bank Int'l*, the Supreme Court acknowledged that, at least at the highest level of generality, all inventions rely on abstract ideas: "[A]n invention is not rendered ineligible for patent simply because it *involves* an abstract concept." 573 U.S. 208, 217 (2014). The Supreme Court explained:

> . . . we tread carefully in construing this exclusionary principle lest it swallow all of patent law. At some level, all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 11
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Applications of such concepts to a new and useful end, we have said, remain eligible for patent protection. Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention. The former would risk disproportionately tying up the use of the underlying ideas and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Id*. (internal citations and quotations omitted).

To avoid absurd results, in the first step of the *Alice* inquiry, the Court must "determine whether **the claims at issue** are directed to one of those patent-ineligible concepts." *Id*. at 217. The Federal Circuit's *Berkheimer* decision re-emphasized that the district court must focus its review on the claims. The court is required to consider the patent eligibility of the specific claims, defining the specific inventions.  Defendant's Motion suffers from the same problems discussed in *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) (reversing decision of patent ineligibility where district court had concluded that the claims were directed to the "abstract idea of categorical data storage" but the Federal Circuit's review of claims themselves "demonstrate[d] that they are directed to an improved computer memory system, not to the abstract idea of categorical data storage.").

Defendant's proposed re-characterization of the claims now at an extremely high level of generality ignores the claims themselves, including the preambles and all of the claim limitations defining systems claimed.  The asserted claims do not claim the "'buildin[g] block[s]'" of human ingenuity and the claims certainly do not claim all uses and applications of the idea of "playing back recorded content."  In addition, the invention is not readily analogizable to a mental process, human activity, or the brick-and-mortar world.  The claims do not recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 12
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

the Internet.  Instead, the patent claims an invention that is specifically addressed to a specific

technical problem with web-based video conferencing, itself a highly technical field that requires

all manner of technologies just to establish the conference, let alone have in operate in a manner

consistent with the claims.

    Google relies on *Interval Licensing v. AOL*, 896 F.3d 1335 (Fed. Cir. 2018), but that case

undermines Google's argument rather than supporting it. First, the parties in *Interval Licensing*

***agreed*** that the claims in the patent in that case were directed to an "attention manager"; and the

district court determined that the abstract idea was "providing information to a person without

interfering with that person's primary activity." *Interval Licensing* at 1341 (quoting the opinion of

the district court).  The claims in *Interval Licensing* ***were*** analogous to a human activity—passing

a note without interpreting someone's attention—and thus are fundamentally different than the

specific claims in this case.

    This case is instead dictated by the outcome in *DDR*. The '637 claims are rooted in

computer technology and recite specific steps that "that resulted in a departure from the routine

and conventional sequence of events after the click of a hyperlink advertisement." 792 F.3d at

1371. Just like in *DDR*, "the claims at issue here specify how interactions with the Internet are

manipulated to yield a desired result—a result that overrides the routine and conventional

sequence of events ordinarily triggered." In *DDR*, the invention changed the routine or

conventional outcome of clicking on an online advertisement. In this case, the '637 claims change

the routine or conventional process of the way otherwise live video conferences can be observed

by participants, allowing participants to control different aspects of an otherwise live event.

Claim 2 claims how web-based conferences that use two different applications (one to stream the

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 13
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

conference and the other to view it) and at least two different data streams that are both streaming live and being recorded such that a participant can time-shift the conference.

### D.   *Alice* Step Two:  Google's Argument about Functional Claiming Contravenes 35 U.S.C. § 112(6), Which Allows Functional Claiming, and Requires Claim Construction and Disputed Factual Issues

The asserted claims recite inventive concepts sufficient to render them patent-eligible. Google argues that claims are not subject-matter eligible because they make use of what Google calls "functional claiming." Dkt. #26, 14-20. Certainly, functional claiming does not render a patent claim invalid of ineligible; indeed, the U.S. patent statute, 35 U.S.C. § 112(6), (pre-AIA) specifically allows functional claiming:

> An element in a claim for a combination may be expressed as a means or step for performing **a specified function** without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Here, the asserted patent claims recite several terms that Google can be expected to argue are expressed functionally, including for example, in claim 7:

> *a time-scale modification component* operatively connected to said second client application which is able to maintain substantially consistent perceived audio quality at a plurality of playback rates

Another example is in claim 2:

> (c) *storage means* for recording said computer screen video and said data stream
> . . .

Certainly, Google can be expected to argue during claim construction that each of these is limited to specific structures, materials, or acts described in the specification (and equivalents thereof). By contrast, Google's argument here asks the Court to find that these functional elements—and all the others— include all generic computer means. Determining now that the claims are

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 14
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

patent-ineligible because of their functional claiming— without conducting claim construction— would be legally erroneous.

Google's motion mixes together several different concepts during its discussion of "functional claiming." In *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, the Supreme Court held certain claims ineligible because they did "no more than … implement the abstract idea of intermediated settlement on a generic computer." In Step Two, what the patent owner characterized as specific hardware did not save the claim because the claim recited only a "data processing system" with a "communications controller" and "data storage unit," which the Court held were "purely functional and generic."

Google's motion relies on *Elec. Power v. Alstom*, 830 F.3d 1350, 1353 (Fed. Cir. 2016), where the patent claimed monitoring of an electric power grid (another longstanding conventional activity) using computer components. That case re-emphasized the distinction between improvements to computer-functionality and, "claims so result-focused, so functional, as to effectively cover any solution to an identified problem." *Id.* at 1356. Google does not argue, much less prove by clear and convincing evidence, that Plaintiff's claims effectively cover all solutions to the identified problems.[2]

Here, as discussed above, Google has not shown in Step One that each claim (or any claim) recites an abstract idea. The claims are inherently technological. In Step Two, Google has

---

[2] Google also relies on *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016) in which the claims took a longstanding conventional practice of broadcasting and applied it to a generic, electronic device, in this case—a wireless cellular telephone. Google also cited *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). The district court found that claims were directed to the abstract idea of (1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 15
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

not shown that the claim elements together as a whole are conventional or routine.  Further in Step Two, the specific claim limitations, including the means structures, are not functional claims and do not include all possible generic computer components, as claim construction will likely show.

Further, Google *itself* makes extensive use of "functional claiming" on its own patents. Consider, for example, claim 1 of Google's '152 patent, which can be described in exactly the same manner as the '637 patent.

| Google's 152 Patent, Claim 1 | Results-Based Functional Claiming Without a Specific Way io Achieve the Result (Applying Google's Argument to Its Patent) |
|---|---|
| An apparatus comprising at least one processor and at least one memory including computer instructions, when executed by the at least one processor, cause the apparatus to: | |
| *establish*, by an application delivery system in response to an identification of an application from a client device, *a video conferencing session* between a first video conferencing endpoint provided on the application delivery system and a second video conferencing endpoint provided on the client device; | • Does not recite how to "establish" "a video conferencing system," much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer function of establishing a video conference*. |
| *select*, by the application delivery system, *a video capture module* as a video input device for the first video conferencing endpoint; | • Does not recite how to "select" "a video capture module," much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer function of selecting a video capture module*. |
| *receive*, by the video capture module provided on the application delivery system, *display data* output by the application; | • Does not recite how to "receive" "display data" much less recite a technological improvement or innovative way of doing so. |

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 16
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

| Google's 152 Patent, Claim 1 | Results-Based Functional Claiming Without a Specific Way io Achieve the Result (Applying Google's Argument to Its Patent) |
|---|---|
| | • Instead, merely recites *generic computer function of receiving display data*. |
| *convert*, by the video capture module, *the display data to a plurality of video frames*; | • Does not recite how to "convert" "the display data to a plurality of video frames," much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer function of converting the display data to a plurality of video frames*. |
| *stream the plurality of video frames* received via the video capture module from the first video conferencing endpoint to the second video conferencing endpoint via the video conferencing session; and | • Does not recite how to "stream the plurality of video frames" much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer function of streaming the plurality of video frames.* |
| *receive*, by the application delivery system from the client device, *a user input signal* for the application. | • Does not recite how to "receive" "a user input signal" much less recite a technological improvement or innovative way of doing so.<br>• Instead, merely recites *generic computer function of receiving a user input signal*. |

Thus, the supposed shortcomings of the '637 patent are used by Google in its own patents. The claims use "functional claiming"; they do not explain *how* the claimed function is accomplished. Because Google necessarily believes its own '152 patent is subject matter eligible, however, it should explain what is different about the subject-matter-eligible claims of Google '152 patent and the subject-matter-ineligible claims of the '637 patent. At a minimum, Plaintiff should be afforded an opportunity to take discovery from Google to determine the basis on which Google contends its own patents are subject matter eligible. Whatever those reasons are likely applies with equal force to the '637 patent.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 17
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

### E.   The FAC Properly Alleges Both Direct and Indirect Infringement Allegations Added to the First Amended Complaint

Google's final argument is that the complaint should be dismissed because the Complaint "fails to plausibly allege that Google 'benefits' or 'uses' the entire claimed System" Mot. 24:6-7. Google is wrong the facts and the law.  The FAC is not limited to allegations of infringement regarding "use" of the system, so the motion should be denied on that basis alone.  To the extent "use" allegations are made, they comply with the legal requirements for such allegations under *Centillion* and the motion should be denied for that reason as well.

#### 1.   Google's Motion Ignores the Allegations in the Amended Complaint

The asserted claims describe a "system" for web-based conferencing, After the initial complaint was served, Google raised purported concerns based on the *Centillion* case that the initial complaint did not sufficiently explain how Google put the infringing systems into place and benefited from its use.  To address these concerns, the Plaintiff filed an amended complaint that added extensive new paragraphs and included a revised claim chart as Exhibit 1.  Some of the new allegations, each of which must be treated as true on a motion to dismiss, are set forth below:

> 21. Google put the YouTube system into place, exercises control over it, and benefits from the YouTube system.
>
> 22. One way Google allows access to YouTube content is by maintaining a website at the address https://www.youtube.com/ (the "YouTube Website").
>
> 23. Another way Google allows access to YouTube content is by developing and distributing an application called "YouTube" that is made available in several formats, including for devices using either the Android or iOS operating systems (the "YouTube App").
>
> 24. Google allows and encourages "live streaming" to the YouTube Website or the YouTube App through at least three different technologies: webcams, mobile, and the use of an encoder.  This complaint focuses on the last two technologies: mobile and the use of an encoder.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 18
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

25. For mobile-based live streaming, Google does not require the use of encoding software; Google supports live streaming through YouTube from Android devices or Apple iPhone or iPad devices.

26. For encoder-based live streaming, Google maintains "live streaming" webpages, such as studio.youtube.com, which is one way users initiate a live stream on YouTube.  For encoder-based live streaming, Google also instructs users how to add a third-party encoder that can take the form of software encoders, hardware encoders, or mobile encoders.

27. Google controls and/or directs the actions of the third-party encoders, including by, for example, establishing technical specifications that the encoders must meet and how they must function in Google's system, including by requiring the encoders to accept inclusion of a YouTube "stream key" and by verifying the encoders comply with YouTube's extensive "verification prerequisites"

28. YouTube's control over verified encoders includes the following general requirements (each with its's own list of sub-requirements):  Correct API Use; Optimal User Experience; Transmission; Error Handling; Measurability and Brand Use. https://support.google.com/youtube/answer/6259859?sjid=567257342420393900-NA.

29. YouTube also requires that encoders comply with YouTube Live encoding standards. https://support.google.com/youtube/answer/2853702?sjid=155782182901606455 45-NA

30. Google expressly instructs how users should setup systems for live streaming using software or hardware encoders, both of which also require the use of a YouTube "stream key" for the live stream to be initiated.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 19
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**Gaming & casual live streams**
Many streamers use an external microphone, webcam, and headphones. Gamers may also use other tools like a greenscreen.



**Professional live streams**
Advanced stream setups can include more than one microphone, camera, mixer, and hardware encoder.



https://support.google.com/youtube/answer/2907883?hl=en&ref_topic=9257984&sjid=7224752144479992201-NA#zippy=

31. Google also includes extensive instructions for how streaming software functions on Google's system studio.youtube.com website.  Google instructs users wishing use Google's system to live stream content to "paste the [YouTube] stream key into your software" that is used to stream content to YouTube.

32. Regardless of how a live stream on YouTube is activated (mobile, or an encoder/YouTube stream key), Google has programmed YouTube to allow what it calls a "DVR feature" for live streaming.

33. When the DVR feature is activated, Google's system allows YouTube viewers of live streams to "pause, rewind, and continue during the event."

34. Google exercises control of the YouTube system and benefits from its use.

A redline version comparing the original complaint with the FAC is attached as Exhibit 3.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 20
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

The infringement allegations are not limited to "use" of the infringing system. Paragraph 37 expressly states that "Google directly infringes the asserted claims of the Patent-in-Suit under 35 U.S.C. § 271(a) by **making**, using, **supplying, offering for sale, and selling** YouTube in the U.S. that includes the systems claimed in the Patent-in-Suit."  Paragraph 46 expressly states: As shown on the claim chart attached as Exhibit 1, which is incorporated by reference, Google's YouTube service directly practices each and every element of claim 2 of the '637 Patent.  The claim chart on Exhibit 1 shows preliminary analysis and exemplary preliminary evidence based on public information."  The claim chart explains different ways Google's YouTube infringes, and the FAC breaks out how those differences affect the infringement analysis.

For example, paragraph 47 states: "Google directly infringes each and every element of claim 2 at least in the situation where a user is capturing screen video and livestreaming it though YouTube using a mobile device." Similar allegations are made in paragraphs 56 (claim 3), 64 (claim 4), 69 (claim 5), 75 (claim 7), 83 (claim 8), and 90 (claim 9). Note that there is no use of a third-party encoder in this situation. Google controls 100% of the system, end-to-end.  Google is **making** the infringing system, **offering** it for sale, and **selling** it.

As another example, paragraph 48 alleges: "Google also directly infringes each and every element of claim 2 at least in the situation where a user is sharing a conference initiated in Google Meet and livestreaming the conference on YouTube at least with the use of Google Meet's Jam Board Feature."  Again, this is end-to-end making, offering for sale, selling, and using by Google.

Google's motion simply ignores the express allegations in the Complaint.

### 2.    The FAC's "Use" Allegations Conform with *Centillion*

Google argues that the FAC is defective because it does not allege that Google does not "benefit" from each element of the asserted claims. Mot. 24-29.  Even in this limited respect –

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 21
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

which ignores completely the allegations that Google is making, offering for sale, and selling the infringing system – Google is wrong. The allegations cited above and the claim chart attached to the FAC explain how Google directly each element of the asserted claims.

With regard to "use" of the infringing system, the FAC includes pleading in the alternative. Paragraphs 49-51, for example, allege:

> 49. Google also directly infringes every element of 2 where Google provides a user with a Google "live stream key" enabling the user to share computer video data through initiating live streaming through a YouTube live stream website such as studio.youtube.com.
>
> 50. To the extent an encoder is necessary, Google controls an/or directs how the third-party encoders must operate such that Google is the party putting the infringing system into use and benefitting from that use and Google directly infringes claim 2 for that reason.
>
> 51. ***In the alternative***, if element A of claim 2 is interpreted to require the use of a third-party encoder as "the first client application" (as opposed to a YouTube live streaming website  itself being the first client application) and the Court concludes that Google does not control or direct the third-party encoder to comply with the YouTube system, then Google is liable for inducing infringement of claim 2 because Google had knowledge of '637 patent and the way YouTube infringed claim 2 of that patent at least as early as the date the initial complaint was served on Google in this action and Google has continued to expressly promote the use of encoders (software or hardware) to capture computer screen video for livestreaming on YouTube. See paragraphs 26 to 31 above.

The fact that the FAC *itself* identifies a claim interpretation issue—what constitutes "the first client application" in the context of a system using a third-party encoder—demonstrates why Google's motion cannot be granted at this stage of the litigation.  It also demonstrates, however, that the FAC has properly pled both direct and indirect infringement.  The Court need not decide which of the two alternative theories applies at this time; it is enough to conclude that the motion to dismiss should be denied at this stage.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 22
CASE NO.  2:23-cv-00592-JHC

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Google's final argument is that the FAC should be dismissed because it does not allege how Google put each individual claim element into use and benefits from it.[3]  As a factual matter, this argument is incorrect in several respects.  It ignores those situations where Google controls the entire system, end-to-end; it ignores the claim chart showing how Google uses each element even when third-party encoders are used; and it ignores completely the allegations that it is Google that benefits from the infringing system.  Ex. Dkt. #26, 21, 34-36 (*e.g.*, Google earned $28.845 billion from YouTube adds in 2021).

## V.   Conclusion

For the foregoing reasons, Plaintiff respectfully request denial of Google's motion to dismiss.  In the alternative, to the extent the Court finds any defects in the FAC, Plaintiff request an opportunity to amend the complaint to address any such defects.

DATED this 11th day of September, 2023.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

I CERTIFY THAT THIS OPPOSITION CONTAINS 7,040 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By *s/ J. Chad Mitchell*
J. Chad Mitchell, WSBA #39689

---

[3] Putting its other cases aside, Google's reliance on *Grecia v. McDonalds*, for a supposed proposition that a patent infringement complaint must allege that the infringer "benefits from each claimed component" should be ignored.  *Grecia* is nonprecedential, a fact Google fails to inform the court. The face of the opinion itself expressly states "NOTE: This disposition is nonprecedential."  While it is not improper *per se* for Google to cite the case, it is at least unfortunate that Google did not acknowledge the nonprecedential status of *Grecia.* Under Federal Circuit rules, the Federal Circuit "will not give one of its own nonprecedential dispositions the effect of binding precedent." Fed. Cir. Rule 32.1(d).

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 23
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

315 5th Ave. S., Ste. 1000
Seattle, WA 98104-2682
Telephone: (509) 735-5053
*chadm@summitlaw.com*

GLOBAL IP LAW GROUP, LLC

By *s/ David Berten*
David Berten
(*pro hac vice pending*)
55 W. Monroe St., Ste. 3400
Chicago, IL 60603
Telephone: (312) 241-1502
*dberten@giplg.com*

*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 24
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001