1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| US PATENT NO. 7,679,637 LLC,<br><br>                    Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | CASE NO. 2:23-cv-00592-JHC<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS |

**I**

**INTRODUCTION**

This patent matter comes before the Court on Google's Rule 12(b)(6) Motion to Dismiss the First Amended Complaint.  Dkt. # 26.  Plaintiff claims infringement of its patent.  Google seeks dismissal, arguing ineligibility under Section 101 of the Patent Act.  Applying the two-step test of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), for the reasons discussed below, the Court finds that (1) the representative claims of the patent are directed to an abstract idea; and (2) such claims do not contain an inventive concept sufficient for patent eligibility.  Further, the Court concludes that amendment of the operative pleading would be futile.  Accordingly, the Court GRANTS Defendant's motion and DISMISSES this matter with prejudice.

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 1

## II

### BACKGROUND

On March 16, 2010, the United States Patent and Trademark Office issued U.S. Patent No. 7,679,637 ('637 Patent). Dkt. # 25 at 3. Plaintiff U.S Patent No. 7,679,637 LLC owns the '637 Patent. *Id.* Plaintiff filed its complaint on April 18, 2023, Dkt. # 1, and its First Amended Complaint (FAC) on July 31, 2021, Dkt. # 25. Plaintiff claims that Google's YouTube Service directly infringes Claims 2, 3, 4, 5, 7, 8, and 9 of the '637 Patent; and, in the alternative, that Google induces infringement of Claims 2,3, 4, and 5 of the '637 Patent. *Id.* at 3–4.

Defendant moves to dismiss Plaintiff's infringement claim under Rule 12(b)(6), arguing that the '637 Claims are not directed to patent-eligible subject matter required by § 101 of the Patent Act. 35 U.S.C. § 101. Dkt. # 26.[1]

## III

### PROCEDURAL & SUBSTANTIVE STANDARDS

A.     Motion to Dismiss

A defendant may move to dismiss a claim under Rule 12(b)(6) when a pleading "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), courts construe the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). Courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). But courts are not required "to accept as true allegations that are

---

[1] In the alternative, Defendant argues for dismissal on the ground that the FAC "fails to plausibly allege that Google 'benefits' or 'uses' the entire claimed system." Dkt. # 26 at 30. Because the Court finds the '637 Patent ineligible under § 101, it need not address this argument in the alternative.

merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

B.      Section 101 Standards

Federal Circuit law applies to "substantive and procedural issues unique to and intimately involved in federal patent law." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1338 (Fed. Cir. 2016).

Patent eligibility may be resolved on a motion to dismiss so long as there "are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022); *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).

Section 101 of the Patent Act authorizes protection for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof[.]" 35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quotation marks omitted).

In *Alice Corp. Pty. Ltd.*, the Supreme Court outlined a two-step process for courts to use when assessing whether a claimed invention is an unpatentable abstract idea: first, the court asks

1  whether the patent claims are directed to unpatentable subject matter, and second, if so, the court

2  asks whether the patent includes an "inventive concept" implementing the abstract idea.  573

3  U.S. 208.

4  When conducting an *Alice* analysis, the court must consider the "representative" claims

5  of a patent.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).  "Courts may treat a

6  claim as representative in certain situations, such as if the patentee does not present any

7  meaningful argument for the distinctive significance of any claim limitations not found in the

8  representative claim or if the parties agree to treat a claim as representative."  *Id.*; *see also Elec.*

9  *Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016) (affirming district court's

10  finding of representativeness when patentee did not "present[] any meaningful argument for the

11  distinctive significance of any claim limitations other than those included in" the representative

12  claim).  "A claim is not representative simply because it is an independent claim."  *Berkheimer*,

13  881 F.3d at 1365.

14  As touched on above, *Alice* step one requires the court to determine whether the

15  representative claims are "directed to" one of the patent-ineligible concepts: laws of nature,

16  natural phenomena, and abstract ideas.  *Alice Corp. Pty. Ltd.*, 573 U.S. at 217.  If the

17  representative claims are not directed to any of these concepts, the court must find the claims are

18  patent eligible under § 101.  When conducting this analysis, courts may "compare [the] claims at

19  issue to those claims already found to be directed to an abstract idea in previous cases."  *Enfish,*

20  *LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  And the Federal Circuit has

21  approached this inquiry by asking "what the patent asserts to be the focus of the claimed advance

22  over the prior art."  *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (internal

23  quotation marks and citations omitted).  The court "must focus on the language of the Asserted

24

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 4

Claims themselves . . . considered in light of the specification." *Id.* (internal quotation marks and citation omitted).  The court must "look to whether the [representative] claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

"In cases involving software innovations, this inquiry often turns on whether the [representative] claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *TecSec, Inc.*, 978 F.3d at 1293 (internal quotation marks and citation omitted). "[S]oftware can make patent-eligible improvements to computer technology, and related claims are eligible as long as they are directed to non-abstract improvements to the functionality of a computer or network platform itself." *Id.* (internal quotation marks and citation omitted).  The Federal Circuit has held software-related claims patent eligible when (1) "the focus of the claimed advance is on a solution to 'a problem specifically arising in the realm of computer networks' or computers, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–58 (Fed. Cir. 2014)[,]" and (2) the claim identifies "a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function, *Uniloc [USA, Inc. v. LG Elecs. USA, Inc.]*, 957 F.3d [1303,] 1306, 1308–09 [(Fed. Cir. 2020)]." *Id.*

A claim is patent ineligible when it "applies a well-known idea using generic computers 'to the particular technological environment of the Internet.'" *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (quoting *DDR Holdings, LLC*, 773 F.3d at 1259); *see also Two-Way Media Ltd.*, 874 F.3d at 1337 ("Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible."); *see also*

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 5

*Affinity Labs of Texas LLC v. DIRECTV LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("The Supreme Court and [the Federal Circuit] have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."). Finally, "a claim that merely describes an effect or result dissociated from any method by which it is accomplished is usually not directed to patent-eligible subject matter." *Int'l Bus. Machs. Corp. v. Zillow Grp. Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (internal quotation marks and citation omitted).

If the court determines the representative claims are directed to one of the patent-ineligible concepts, the court proceeds to *Alice* step two and determines whether the patent claims include an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice Corp. Pty. Ltd.*, 573 U.S. at 217 (internal quotation marks and citation omitted) (alteration in original). To become patent-eligible, a claim directed to a patent-ineligible concept "requires more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *ChargePoint, Inc.*, 920 F.3d at 773. When a claim "amount[s] to nothing significantly more than an instruction to apply [an] abstract idea … using some unspecified, generic computer and in which each step does no more than require a generic computer to perform generic computer functions" the abstract idea does not become patent-eligible "because claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept." *Intell. Ventures I LLC*, 838 F.3d at 1316 (internal quotation marks and citations omitted).

Finally, a court may conduct a § 101 analysis before formal claim construction if the patentee does not "explain how any proposed construction would change the § 101 analysis."

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 6

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525 (Fed. Cir. 2021) (affirming § 101 determination on a motion to dismiss before claim construction because plaintiff proposed no construction that would have changed the § 101 analysis). A § 101 analysis may be conducted before formal claim construction "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). But when a party does not identify any claim construction issues that need to be resolved or any factual disputes that would affect a § 101 analysis, the Federal Circuit has dismissed without conducting claim construction. *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *6 (Fed. Cir. Jan 9, 2024).

## IV

### DISCUSSION

A.   The '637 Patent

According to the '637 Patent abstract, it is,

> [a] web conferencing system which, in one aspect has time-shifting capabilities. Session content is recorded so that participants are able to observe the session in real-time, delayed while the session is still in progress, or after the session has completed. Participants are also able to observe the session at normal, slower, or faster speeds, while maintaining substantially consistent perceived audio quality.

Dkt. # 27-2 at 2. The '637 Patent specification[2] describes the system as a "multi-part software program comprised of a server application **110** running on a computer connected through a

---

[2] The specification "'includes both the written description and the claims' of the patent." *Cisco Sys. v. TQ Delta, LLC*, 928 F.3d 1359, 1362 (Fed. Cir. 2019) (quoting *In re Packard*, 751 F.3d 1307, 1320 n.11 (Fed. Cir. 2014)).

1
2

network **118** to multiple client applications **120***a*-**120***n*, each running on a computer." *Id.* at 9 (see FIG. 1 below).[3]

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18
19
20
21
22

And the specification explains several advantages of the '637 Patent:

A participant can enter a meeting after it has begun and either begin observing the live content or rewind and see the content that they missed

A participant can observe a meeting in real-time and be able to pause the content to deal with an interruption

A participant observing a meeting can easily replay an interesting segment

23
24

---

[3] Dkt. # 27-2 at 3.  Figure 1 "is a block diagram which illustrates the general organization and main components of an embodiment of a time-shifted web conferencing system."  Dkt. # 27-2 at 9.

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 8

A participant can observe a live meeting at slower than real-time to more easily digest the content

A participant observing on a delay (from joining late, pausing, replaying, etc. . . .) can observe the content faster than real-time[.]

*Id.*

*Language of the Claims allegedly infringed—i.e., Claims 2–5 and 7–9*

Claim 2 of the '637 Patent provides:

A web conference system comprising:

(a) A first client application allowing at least one presenting participant to share computer screen video,

(b) said first client application also being arranged to allow said presenting participant to share at least one data stream selected from the group consisting of chat data, documents, web pages and white-boarding session,

(c) storage means for recording said computer screen video and said data stream, and

(d) a second client application allowing at least one observing participant to sense said computer screen video and said data stream live,

(e) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream while said presenting participant is sharing a current part of said computer screen video and said data stream,

(f) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream after said presenting participant has finished sharing a said computer screen video and, said data stream

whereby said web conferencing system is able to simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts of said computer screen video and said data stream.

*Id.* at 13.

Claim 3 of the '637 Patent provides:

The system of claim 2 wherein:

(a) said first client application allows said presenting participant to share audio data

(b) said storage means records said audio data, and

(c) said second client application allows said observing participant to sense said audio data.

*Id.* at 13.  Claim 3 depends on Claim 2.  Dkt. # 25 at 13.

Claim 4 of the '637 Patent provides:

The system of claim 3 wherein:

(a) said web conferencing system includes an audio time-scale modification component,

(b) said second client application also allows said participant to observe said computer screen video, said data stream, and said audio data at an adjustable rate of speed,

(c) whereby said audio time-scale modification component maintains substantially consistent perceived aspects of audio quality at a plurality of chosen playback rates of speed.

Dkt. # 27-2 at 14.  Claim 4 depends on Claim 3.  Dkt. # 25 at 14.

Claim 5 of the '637 Patent provides:

The system of claim 4 wherein said second client application also allows said observing participant to perform time-shifting operations comprising pausing, resuming and seeking.

Dkt. # 27-2 at 14.  Claim 5 depends on Claim 4.  Dkt. # 25 at 15.

Claim 7 of the '637 Patent provides:

A web conferencing system comprising:

(a) a first client application that allows at least one presenting participant to share data streams comprised of audio data and computer screen video data

(b) a second client application that allows at least one observing participant to sense said data streams

(c) a server application operatively connected to said first client application and to said second client application, said server application arranged to: i. receive said data streams from said first client application and record it in a storage device ii. retrieve said data streams from said storage device and send it to said second client application

(d) a time-scale modification component operatively connected to said second client application which is able to maintain substantially consistent perceived audio quality at a plurality of playback rates

whereby said data streams from said first client application can be simultaneously recorded by and retrieved from said storage device, and said second client application allows said observing participant to sense said data streams in real-time, and said second client application also allows said observing participant to selectively sense a previously presented and recorded part of said data streams at a plurality of playback rates at the same time that said presenting participant is sharing a current part of said data streams and after said presenting participant has stopped sharing, and said observing participant will perceive substantially consistent audio quality.

Dkt. # 27-2 at 14.

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 10

Claim 8 of the '637 Patent provides:

> The system of claim 7 wherein said data streams also include data selected from the group consisting of chat data, documents, web pages and white-boarding session.

*Id.*

Claim 9 of the '637 Patent provides:

> The system of claim 8 wherein said second client application allows said observing participant to perform time-shifting operations comprising pausing, resuming and seeking said data streams.

*Id.*  Claim 9 depends on Claim 8.  Dkt. # 25 at 19

B.      The Representative Claims

        Defendant argues that Claims 2–5 are representative "because they recite substantially similar limitations and are drawn to the same abstract idea as [C]laims 7-9 with [C]laims 7-9 reciting a 'server application.'"[4]  Dkt. # 26 at 12, 27.  The Court agrees.

        In sum, Claim 2 focuses on the sharing of computer screen video; data stream information including "chat data, documents, web pages, and white-boarding session"; storing of such data; and a second client application enabling another user to observe such data, both live and previously recorded.  Dkt. # 27-2 at 13.  Claim 3 focuses on the sharing, storing, and observation of audio data between first and second client applications.  *Id.*  Claim 4 focuses on the time-scale modification component enabling the second client application to perceive aspects of the audio data at various rates of playback speed.  *Id.* at 14.  And Claim 5 focuses on the second client application's time-shifting operations of pausing, resuming, and seeking.  *Id.*

---

        [4] Defendant also contends that because the '637 Patent "acknowledges that 'the server application' performs generis functions, this limitation does not substantially change the character of [C]laims 7–9 under *Alice*."  Dkt. # 26 at 27.  The Court agrees.

In sum, Claim 7 focuses on the sharing of computer screen video and audio data; the recording and retrieval of such data from a server application; a time-scale modification component enabling the second client application to perceive audio data at various playback rates; and the selective observation and sensing of data streams, both live and previously recorded. Dkt. #27-2 at 14. Thus, Claim 7 is represented by Claims 2, 3, and 4. *Id.* Claim 8 focuses on data stream information including "chat data, documents, web pages and white-boarding session[s]" and is, therefore, represented by claim 2. *Id.* Finally, Claim 9 focuses on the second client applications time-shifting operations of pausing, resuming, and seeking and is represented by Claim 5. *Id.*

Plaintiff responds that Defendant's argument is "conclusory" and that Google has not addressed the question "whether each claim has distinctive claim limitations (*e.g.*, limitations not common to the other claims)." Dkt. # 27 at 11. But the Federal Circuit has explained that claims are representative when "the *patentee* does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365 (emphasis added). And Plaintiff has not done so here. Dkt. # 27 at 11–12. Thus, the Court finds Claims 2–5 representative for purposes of its § 101 analysis.

C.      Claim Construction

Plaintiff says that it would be premature for the Court to determine patent-eligibility at the motion to dismiss stage, and that the Court must conduct a claim construction hearing beforehand. Dkt. # 27 at 18. To support this assertion, Plaintiff says that two terms may be

"functional" under § 112(6):[5] "time-scale modification component" and "storage means."  *Id.*
But Plaintiff merely contends that *Google* may make certain arguments about the functionality of
these terms in a claim construction hearing—Plaintiff neither proposes constructions of these
terms nor explain "how any proposed construction would change the § 101 analysis."  *Mortg.
Application Techs., LLC*, 839 F. App'x at 525.  Therefore, the Court may proceed with a § 101
analysis without conducting claim construction.

D.       The Federal Circuit's application of the *Alice* Two-Step Framework

         District courts may "compare [the] claims at issue to those claims already found to be
directed to an abstract idea in previous cases[]" when considering a motion to dismiss under
§ 101.  *Enfish, LLC*, 822 F.3d at 1335.  Below the Court summarizes instructive cases and then
compares the representative claims of the '637 Patent in its eligibility analysis.

         1.       Cases involving claims directed to ineligible subject matter under § 101

         In *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, the Federal Circuit found patent claims
"directed to a method of receiving, displaying, converting, storing and transmitting digital video
'using result-based functional language'" to be ineligible under § 101.  60 F.4th 1349, 1357 (Fed.
Cir. 2023) (quoting *Two-Way Media Ltd.*, 874 F.3d at 1337).  At *Alice* step one, the Federal
Circuit agreed with the district court's conclusion that the claims were "directed to the abstract
idea of 'storing and displaying video.'"  *Id.* at 1356 (internal citations omitted).  At *Alice* step 2,
the Federal Circuit held that the claims "'read in light of the specification, do not show a
technological improvement in video storage and display because the limitations can be

---

[5] Section 112(6) states that "[a]n element in a claim for a combination may be expressed as a
means or step for performing a specified function without the recital of structure, material, or acts in
support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts
described in the specification and equivalents thereof."  35 U.S.C. § 112(6).

implemented using generic computer elements,' and the 'specification and claims do not explain or show how the monitoring and storage is improved, except by using already existing computer and camera technology.'"  *Id.* at 1358.  And even if the claims attained the patent-holder's purported solution of achieving the "benefit of transmitting the same digital image to different devices for different and perhaps divergent purposes, while using the same bandwidth," the Federal Circuit explained the claims use only "generic functional language" to do so and only require "conventional computer and network components operating according to their ordinary functions[.]"  *Id.* at 1358 (internal quotation marks omitted) (citing *Two-Way Media*, 874 F.3d at 1339).

In *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, the Federal Circuit found a claim ineligible under § 101.  874 F.3d 1329.  The claim recited "a method for routing information using result-based functional language."  *Id.* at 1337.  The court found that the claim required "the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but [did] not sufficiently describe how to achieve these results in a non-abstract way."  *Id.* at 1337 (quoting *Affinity Labs of Tex.*, 838 F.3d at 1258–59).  At *Alice* step 2, the Federal Circuit held that "[m]erely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."  *Id.* at 1338.  The court held that the main problem with the claim was that it "—as opposed to something purportedly described in the specification—is missing an inventive concept."  *Id.* at 1339.  And while the plaintiff said that "the claim solves various technical problems, including excessive loads on a source server, network congestion, unwelcome variations in delivery times, scalability of networks, and lack of precise recordkeeping . . . [the claim] here only uses generic functional language to achieve these purported solutions."  *Id.* at

1339.  The court also saw "no inventive concept in the ordered combination of these limitations." *Id.* at 1339.

In *Interval Licensing LLC v. AOL Inc.*, the Federal Circuit found patent claims directed to "providing information to a person without interfering with the person's primary activity" to be ineligible under § 101.  896 F.3d 1335, 1343 (Fed. Cir. 2018) (internal quotation marks and citation omitted).[6]  The court determined that "[s]tanding alone, the act of providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea" and "the collection, organization, and display of two sets of information on a generic display device is abstract[.]"  *Id.* at 1344–45.  At *Alice* step two, the Federal Circuit began its analysis by stating "[i]t is well-settled that placing an abstract idea in the context of a computer does not 'improve' the computer or convert the idea into a patent-eligible application of that idea."  *Id.* at 1346.  And the court held that the claims at issue did not include the "kinds of limitations we have held to 'solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner.'"  *Id.* at 1347 (quoting *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016), *cert. denied*, ___ U.S. ___, 138 S.Ct. 469, 199 L.Ed.2d 356 (2017)).  The Federal Circuit held that "the claims here do not offer a particular solution to a problem that, in [other cases], was unique to the internet."  *Id.* at 1347.

---

[6] Plaintiff says that *Interval Licensing LLC* is distinguishable because the parties there "*agreed* that the claims in the patent . . . were directed to an 'attention manager'; and the district court determined that the abstract idea was 'providing information to a person without interfering with that person's primary activity.'"  Dkt. # 27 at 17 (citing *Interval Licensing LLC*, 896 F.3d at 1341).  But the district court's order highlighted differences between the plaintiff's and the defendants' positions on the claims: "Defendants argue the asserted claims are directed at the abstract idea of providing information to a person without interfering with the person's primary activity[]" and "[Plaintiff] argues that the claims are 'directed to the operation of an attention manager system[.]"  *Interval Licensing LLC v. AOL Inc.*, 193 F. Supp. 3d 1184, 1187 (W.D. Wash. 2016).  Thus, the Court does not see the case as meaningfully distinct.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Finally, in *International Business Machines Corporation*, the Federal Circuit found two patents ineligible for patent protection under § 101.  2024 WL 89642, at *1.  The district court found the claims of the first patent "'possess[ed] the following indicia of abstractness: (1) describing processes that can be performed with a pen and paper; (ii) using claim language that is result-oriented; and (iii) focusing on an intangible, namely information.'" *Id.* at *4 (quoting J.A. [Joint Appendix] 18).  The district court concluded that the patent "'merely mimics what humans do to search for information, with the added feature of conducting the entire exercise on a computer.'"  *Id.* (quoting J.A. 18).  The Federal Circuit agreed and held that the patent claims "do nothing more than improve a user's experience while using a computer application and are precisely the types of claims that we have held are abstract at step one" in previous cases.  *Id.* The Federal Circuit held that plaintiff "fails to explain how the claims do anything more than '[i]dentify[], analyz[e], and present[] certain data to a user,' which we explained in [a prior case] is 'not an improvement specific to computing.'"  *Id.* (quoting *Int'l Bus. Machs. Corp.*, 50 F.4th at 1378).  Because the claims "do not disclose any technical improvement to how computer applications are used[,]" the Federal Circuit agreed that the first patent is directed to an abstract idea.  *Id.*  As for the second patent, the Federal Circuit agreed with the district court that it was directed to an abstract idea because,

> the claims are directed to improving a user's experience when viewing search results but do not contain any specific mechanism for doing so. For example, representative claim 14 uses results-oriented language, such as "receiving a resource response set of results," "receiving a user context vector," "mapping the user context vector," and "controlling the presentation of the resource response set," without any explanation for how these steps are carried out.

*Id.* at *5.  At *Alice* step two, the Federal Circuit agreed with the district court's determination that "IBM's allegations of inventiveness 'do[] not … concern the computer's or graphical user interface's capability or functionality, [but] relate[] merely to the user's experience and

satisfaction with the search process and results.'" *Id.* at \*4 (quoting J.A. 22).  When the Federal Circuit recently found inventiveness, it highlighted that "the specification for those patents included a 'specific implementation' of improving search results, rather than a simple conceptual description of an improvement." *Id.* (quoting *Weisner v. Google LLC*, 51 F.4th 1073, 1086 (Fed. Cir. 2022).  Thus, the first patent was not patent-eligible.  Similarly, the Federal Circuit found the second patent was not inventive because the plaintiff's claims of inventiveness were not "in the specification or the claims." *Id.*

2.    Cases involving claims directed to eligible subject matter under § 101

According to Plaintiff, *DDR Holdings, LLC v. Hotels.com, L.P.*, controls the outcome here.  773 F.3d at 1257.  There, the Federal Circuit found the patented claims eligible under a § 101 analysis because "the claimed solution [was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*  While the Federal Circuit cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent," it found that the patent's claims at issue did not "broadly and generically claim 'use of the Internet' to perform an abstract business practice" and the claims "specif[ied] how interactions with the internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* at 1258.

Plaintiff also cites *Visual Memory LLC v. NVIDIA Corp.*, in which the Federal Circuit found patented claims eligible under a §101 analysis.  867 F.3d 1253 (Fed. Cir. 2017).  The Federal Circuit found the patents at issue to be "directed to a technological improvement: an enhanced computer memory system." *Id.* at 1258–59.  According to the Federal Circuit, the patent's claims "focus on a 'specific asserted improvement in computer capabilities'—the use of

programmable operational characteristics that are configurable based on the type of processor—instead of 'on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Id.* at 1260 (quoting *Enfish, LLC*, 822 F.3d at 1336).  The Federal Circuit also stated that the patent's specification "discusses the advantages offered by the technological improvement." *Id.* at 1260.  Therefore, the court found that "this is not a case where the claims recite . . .generalized steps to be performed on a computer using conventional computer activity.'" *Id.* at 1260 (quoting *Enfish, LLC*, 822 F.3d at 1338).

E.      The Eligibility of the '637 Patent's Representative Claims Under § 101

        1.      *Alice* Step One

        For three reasons, the Court concludes that the '637 Patent is directed to the abstract idea of playing back recorded content.

        First, Plaintiff does not say, and the claim language does not illustrate how, the claims focus "on a solution to a problem specifically arising in the realm of computer networks or computers." *TecSec, Inc.*, 978 F.3d at 1293 (internal quotation marks and citation omitted).  Nor do the claims identify "a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function[.]" *Id.* (internal quotation marks and citation omitted).

        Plaintiff says that "the patent claims an invention that is specifically addressed to a specific technical problem with web-based video conferencing, itself a highly technical field that requires all manner of technologies just to establish the conference, let alone have in operate in a manner consistent with the claims." Dkt. # 27 at 17.  But the Court struggles to discern what is the "specific technical problem with web-based video conferencing," as Plaintiff does not

elaborate on this.  Elsewhere, Plaintiff says that the claims address the issue that "current web conferencing systems are unable to enable participants to asynchronously observe a live meeting, i.e., observe a previously recorded part of the meeting while the meeting is still in progress." Dkt. # 27-2 at 8.  If this is the "specific technical problem," it is not an issue unique to the internet or "in the realms of computer networks"—it is an issue in most meetings, whether virtual or in-person.

Plaintiff highlights that "playing back of some recorded media was known in other technical fields prior to the invention, e.g., digital video recorders (DVRs) like TiVo, which the patent correctly explains is in 'a separate field' of 'television viewing[.]'"  Dkt. # 27 at 7.  The '637 Patent states,

> Web conferencing systems, however, presented technical challenges that are different from television viewing, and [Plaintiff's] invention solved some of those technical issues, overcoming technological problems specifically arising in the realm of these web conferencing systems. For example, unlike a self-contained DVR, web conferencing systems of the kind claimed in the invention involved at least two distinct applications: one used by the presenter and separate applications used by other participants. The '637 patent expressly claims the use of two different applications. . . . Second, unlike TV, web conferencing systems of the kind claimed in the invention use more than one data stream. The '637 patent expressly claims the use of distinct data streams.

*Id.* at 8.   But this merely summarizes the content of the claims, not any specific improvements. And while there very well may be different technological issues between web conferencing systems and "a self-contained DVR," the Federal Circuit explained that "merely limiting the field of use of the abstract idea to a particular existing technological environment [i.e., web conferencing systems] does not render the claims any less abstract."  *Affinity Labs of Texas LLC*, 838 F.3d at 1259.

More to the point, Plaintiff says that the invention "solved some of those technical issues" but does not specify how the claims make the alleged improvements.  Nor does the claim

language identify the alleged improvements.  Thus, the Court finds that the representative claims do not include a "specific implementation" of improving web-based conferencing.  While "[t]he '637 [Patent] explains that, unlike DVRs/TiVo with televisions, 'current web conferencing systems are unable to enable participants to asynchronously observe a live meeting, i.e., observe a previously recorded part of the meeting while the meeting is still in progress[,]'"  Dkt. # 27 at 8, this is merely a "simple conceptual description of an improvement." *Int'l Bus. Machs. Corp.*, 2024 WL 89642, at *4.

Second, the representative claims of the '637 Patent "possess the following indicia of abstractness: . . . claim language that is result-oriented[.]"  *Int'l Bus. Machs. Corp.*, 2024 WL 89642, at *4.  Plaintiff fails to explain how the claims do anything more than "share"; "store"; enable a user to "observ[e]" and "sense" the data; and enable "time-shifting" capabilities.  Dkt. # 27-2 at 13–14; *see Two-Way Media Ltd.*, 874 F.3d at 1337 ("the claim require[d] the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but [did] not sufficiently describe how to achieve these results in a non-abstract way.").  As the Federal Circuit has explained, "a claim that merely describes an effect or result dissociated from any method by which it is accomplished is usually not directed to patent-eligible subject matter." *Int'l Bus. Machs. Corp*, 50 F.4th at 1378.

Third, the Federal Circuit previously found that "patent claims directed to 'providing information to a person without interfering with the person's primary activity' to be ineligible under § 101."  *Interval Licensing LLC*, 896 F.3d at 1343.  As in *Interval Licensing LLC*, the representative '637 Patent claims merely provide the abstract idea of "collect[ing], organiz[ing], and display[ing] . . . two sets of information on a generic display device."  *Id.* at 1344–45.  Moreover, the '637 Patent describes its functions as the recording of session content "so that

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 20

participants are able to observe the session in real-time, delayed while the session is still in progress, or after the session has completed."  Dkt. # 27-2 at 2.  And unlike in *DDR Holdings*, the claims here do not offer a solution to an issue unique to the internet.  773 F.3d at 1257.

Finally, in *Hawk Technology Systems*, the Federal Circuit found patent claims "directed to a method of receiving, displaying, converting, storing and transmitting digital video 'using result-based functional language[,]'" ineligible under § 101.  60 F.4th at 1357.  The representative claims of the '637 Patent are similarly directed.  Claim 2 outlines a "web conference system" allowing for an application to "share computer screen video" and other data; enabling "storage means for recording" said video and data; and a "second client application" enabling another participant to sense said live and previously recorded data.  Dkt. # 27-2 at 13. Claim 3 builds on Claim 2 and provides for the "shar[ing]," "stor[ing], and "observing" of audio data.  *Id.*  Claim 4 builds on Claim 3 and allows for "time-scale modification" of shared screen data, audio data, and the data stream.  *Id.* at 14.  Finally, Claim 5 enables the observing client application to pause, resume, and seek shared data.  *Id.*

For these reasons, the Court finds the representative claims of the '637 Patent to be directed to an abstract idea.

       2.    *Alice* Step Two

Because the Court finds the representative claims of '637 Patent to be directed to an abstract idea, it must proceed to step two of the *Alice* framework.  Defendant argues that the "[i]ndividual [e]lements and [o]rdered [c]ombination" of the representative claims of the '637

Patent "[f]unction in a [c]onventional [w]ay and [d]o [n]ot [s]upply an [i]nventive [c]oncept." Dkt. # 26 at 26 (in heading).  The Court agrees.[7]

Plaintiff states that "[t]he asserted claims recite inventive concepts sufficient to render them patent-eligible." Dkt. # 27 at 18.  But Plaintiff does not explicitly identify these "inventive concepts" and neither the claim language nor the specification outlines these concepts.  "Merely alleging inventiveness without tying those allegations to the patent is insufficient to survive a Rule 12 motion." *Int'l Bus. Machs. Corp.*, 2024 WL 89642, at *5.[8]

Assuming the '637 Patent's inventive concept is the enablement of a user to "observe a previously recorded part of the meeting while the meeting is still in progress," Dkt. # 27 at 8, this language does not sufficiently recite an inventive concept.  It merely restates the "abstract goals of the invention; [it does] not teach how" a previously recorded part of the meeting can be observed while the meeting is still in progress.  *IBM v. Zillow*, 549 F. Supp. 3d 1247, 1268 (W.D. Wash. 2021), aff'd, *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371 (Fed. Cir. 2022); *see also Dropbox Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (finding that the plaintiff's claims that each patent solves "given technological problems, but

---

[7] In the opposition brief, in the section addressing *Alice* step 2, Plaintiff cites a prior Google patent arguing that "Google ***itself*** makes extensive use of 'functional claiming' on its own patents." Dkt. # 27 at 20–21.  This prior patent is immaterial.  The focus of the § 101 analysis is on the claim language of the '637 Patent.  Therefore, this Court must consider the claims of the '637 Patent for the § 101 analysis.  Whether Defendant has prior patents that also employ "functional claiming" does not affect this analysis.

Also, Plaintiff says that Defendant's 12(b)(6) motion has transformed into a motion for summary judgment because Defendant introduced a patent not on the face of Plaintiff's complaint, Dkt. # 27 at 13–14 (citing Dkt. # 26 at 14).  But the Court does not rely on that patent in its § 101 analysis and need not address this argument.

[8] Plaintiff says that the *Aatrix* decision precludes dismissal based on Rule 12(b)(6), Dkt. # 27 at 14–15, but the Court disagrees.  In *Aatrix*, the patentee pointed to "concrete allegations in the [] complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity [and] [t]here are also concrete allegations regarding the claimed combination's improvement to the functioning of the computer." 882 F.3d at 1128.  Plaintiff does not point to concrete allegations of this sort.

never provide more support than a conclusory statement that 'the inventions described and claimed ... solved these problems,' improved the art, 'represented a significant advance over existing approaches[,] and were not well-known, routine, or conventional in the field' at the time of patenting" were no more than a "series of legal conclusions" and "insufficient to survive a motion to dismiss.").

Moreover, despite Plaintiff's assertion that the '637 Patent provides inventive concepts, the representative claims "only use[] generic functional language to achieve these purported solutions." *Two-Way Media Ltd.*, 874 F.3d at 1339; *see also BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application."). The representative claims are comprised of "generic computer functions." *Intell. Ventures I LLC*, 838 F.3d at 1318. Claim 2 provides for the "shar[ing] of computer screen video[,]" "storage means for recording[,]" and receiving recorded content. Dkt. # 27-2 at 13. Claim 3 provides for "audio time-scale modification component." *Id.* at 14. Claims 2 and 3 provide for recording computer screen video, data streams, and audio data. *Id.* at 13–14. Claims 2, 3, and 4 provide for sharing and sensing data streams, audio data, and computer screen video data. *Id.* And Claim 5 provides for time-shifting operations including pausing, resuming, and seeking. *Id.* at 14. The Federal Circuit held in *Two-Way Media Ltd.*, that claims requiring the "processing of data streams, [and] transmi[ssion] . . . from an intermediate computer" as well as claims "receiving and transmitting a real-time media stream from an intermediate server, . . . and recording certain information about the steam" require nothing more "than conventional computer and network components

operating according to their ordinary functions."  874 F.3d at 1340–41 (internal quotation marks and citation omitted).

Finally, recent Federal Circuit cases determining § 101 patent eligibility are instructive. As in *Hawk Technology Systems*, the representative claims of the '637 Patent, read in light of the specification, "do not show a technological improvement in video storage and display because the limitations can be implemented using generic computer elements[.]" 60 F.4th at 1358.  Nor do the claims "explain or show how the monitoring and storage is improved, except by using already existing computer and camera technology."  60 F.4th at 1358.  And compared to *Visual Memory LLC*, while the '637 Patent's specification "discusses the advantages offered by" their patent claims, Dkt. # 27-2 at 9, it does not specify the technological improvement.  867 F.3d at 1260.

For these reasons, the Court finds that the representative claims of the '637 Patent do not contain an inventive concept sufficient for patent eligibility under § 101.

F.    Dismissal With Prejudice

Plaintiff requests an opportunity to amend if this Court finds any defect in their FAC. Dkt. # 27 at 27.  A district court must grant leave to amend unless one or more of these factors are present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Courts in this district have dismissed without leave to amend when amendment would be futile after determination of ineligibility under §101.  *See e.g.*, *PTP OneClick, LLC v. Avalara, Inc.*, 413 F. Supp. 3d 1050, 1065 at n.11 (W.D. Wash., 2019) ("Dismissal without leave to amend is appropriate only when the court is satisfied that the

deficiencies in the complaint could not possibly be cured by amendment. . . .  Here, no amendment can revive the eligibility of the '915 Patent. . . . Accordingly, the court dismisses PTP's patent infringement claim without leave to amend."); *Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1184 (W.D. Wash., 2016) (dismissal of complaint with prejudice where the court found the patents in question cover ineligible subject matter).

Also, based on futility, the Federal Circuit has affirmed district court dismissals without leave to amend under Ninth Circuit law.  For example, in *Sanderling Mgmt. v. Snap Inc.,* the Central District of California's dismissal of an infringement suit for lack of patent-eligible subject matter under 35 U.S.C. § 101 and denial of plaintiff's motion for leave to amend complaint was appealed.  65 F.4th 698 (Fed. Cir. 2023).  The Federal Circuit held,

> [n]o amendment to a complaint can alter what a patent itself states. In this case, then, our agreement with the district court as to what the patent discloses, and our agreement with the court's application of the *Alice* test, leads inexorably to the conclusion that amendment of the complaint would have been futile. Sanderling's proposed amendment merely sought to add conclusory statements that the claimed steps were not well-known, routine, and conventional.

*Id.* at 706.

The Court finds that granting leave to amend would be futile.  The claim language of '637 Patent dictates the result of § 101 ineligibility and amendment cannot rectify that.  *See Sanderling Mgmt.*, 65 F.4th at 706 ("[n]o amendment to a complaint can alter what a patent itself states.").

## V

### CONCLUSION

For these reasons, the Court GRANTS Defendant's Motion to Dismiss and DISMISSES the FAC with prejudice.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 25

1

Dated this 25th day of January, 2024.

2

3

John H. Chun
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 26