# United States Court of Appeals for the Federal Circuit

_____

**US PATENT NO. 7,679,637 LLC,**
*Plaintiff-Appellant*

v.

**GOOGLE LLC,**
*Defendant-Appellee*

_____

2024-1520

_____

Appeal from the United States District Court for the Western District of Washington in No. 2:23-cv-00592-JHC, Judge John H. Chun.

_____

Decided: January 22, 2026

_____

DAVID P. BERTEN, Global IP Law Group, Chicago, IL, argued for plaintiff-appellant. Also represented by ALISON AUBREY RICHARDS.

JOHN R. BOULE, III, Jones Day, Los Angeles, CA, argued for defendant-appellee. Also represented by T. KAITLIN CROWDER, Cleveland, OH; MICHAEL C. HENDERSHOT, Palo Alto, CA; ISRAEL SASHA MAYERGOYZ, Chicago, IL; JENNIFER L. SWIZE, Washington, DC; RITA J. YOON, San Francisco, CA.

_____

Before MOORE, *Chief Judge*, HUGHES and STOLL, *Circuit Judges*.

MOORE, *Chief Judge*.

US Patent No. 7,679,637 LLC appeals an order of the United States District Court for the Western District of Washington granting Google LLC's (Google) motion to dismiss for failure to state a claim upon which relief can be granted. For the following reasons, we affirm.

## BACKGROUND

Appellant owns U.S. Patent No. 7,679,637, which relates to web conferencing systems that include "time-shifting capabilities" enabling participants "to observe [a] session in real-time, delayed while the session is still in progress, or after the session has completed." '637 patent at abstract, 3:61–64; *see also id.* at 2:33–43. Participants can also observe the session at different playback rates while maintaining substantially consistent perceived audio quality. *Id.* at 3:64–67. According to Appellant, and undisputed by Google on appeal, the claims allow data streams (e.g., video, chat data, documents, web pages, and whiteboarding sessions) to be viewed asynchronously, for example, to go back and review one aspect of a multimedia presentation while another aspect is proceeding live. Appellant Br. 29–30; *see also* Google Br. 3–4.

Independent claims 2 and 7 of the '637 patent are representative. Claim 2 reads:

2. A web conferencing system comprising:

(a) a first client application allowing at least one presenting participant to share computer screen video,

(b) said first client application also being arranged to allow said presenting participant to share at least one data stream selected from the group

US PATENT NO. 7,679,637 LLC v. GOOGLE LLC                     3

consisting of chat data, documents, web pages and white-boarding session,

(c) storage means for recording said computer screen video and said data stream, and

(d) a second client application allowing at least one observing participant to sense said computer screen video and said data stream live,

(e) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream while said presenting participant is sharing a current part of said computer screen video and said data stream,

(f) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream after said presenting participant has finished sharing a said computer screen video and, said data stream

whereby said web conferencing system is able to simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts of said computer screen video and said data stream.

'637 patent at 12:32–61.

Claim 7 reads:

7. A web conferencing system comprising:

(a) a first client application that allows at least one presenting participant to share data streams

comprised of audio data and computer screen video data

(b) a second client application that allows at least one observing participant to sense said data streams

(c) a server application operatively connected to said first client application and to said second client application, said server application arranged to:

    i. receive said data streams from said first client application and record it in a storage device

    ii. retrieve said data streams from said storage device and send it to said second client application

(d) a time-scale modification component operatively connected to said second client application which is able to maintain substantially consistent perceived audio quality at a plurality of playback rates

whereby said data streams from said first client application can be simultaneously recorded by and retrieved from said storage device, and said second client application allows said observing participant to sense said data streams in real-time, and said second client application also allows said observing participant to selectively sense a previously presented and recorded part of said data streams at a plurality of playback rates at the same time that said presenting participant is sharing a current part of said data streams and after said presenting participant has stopped sharing, and said observing participant will perceive substantially consistent audio quality.

*Id.* at 13:20–14:19.

Appellant sued Google for infringing claims 2–5 and 7–9 of the '637 patent. J.A. 87–88. Google moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing the asserted claims are patent-ineligible under 35 U.S.C. § 101.[1] J.A. 121–36. The district court granted Google's motion to dismiss and denied Appellant leave to amend its complaint based on futility. J.A. 1–25. US Patent No. 7,679,637 LLC appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's Rule 12(b)(6) dismissal under the law of the regional circuit, here the Ninth Circuit. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). The Ninth Circuit reviews Rule 12(b)(6) dismissals de novo, accepting all factual allegations in the complaint as true and construing the pleadings in the light most favorable to the nonmoving party. *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

### I.  Patent Eligibility

Patent eligibility under 35 U.S.C. § 101 is a question of law that may contain underlying factual issues. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). We review the district court's ultimate conclusion on patent eligibility de novo. *Id.* We assess patent eligibility using a two-part test. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, "[w]e must . . . determine whether the claims at issue are directed to a patent-

---

[1] Google also argued Appellant failed to plausibly allege that Google "benefits" from or "uses" the entire claimed system. J.A. 136. The district court did not reach this alternative argument, J.A. 2 n.1, and we do not reach it on appeal.

ineligible concept," such as an abstract idea (i.e., *Alice* Step One). *Id.* at 218. If so, we must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" (i.e., *Alice* Step Two). *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78–79 (2012)). The Supreme Court has described *Alice* Step Two as "a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* at 217–18 (citation modified) (quoting *Mayo*, 566 U.S. at 72–73).

Applying the *Alice* test, the district court determined the asserted claims are patent-ineligible because they are directed to an abstract idea and do not include an inventive concept that makes the claims patent-eligible. J.A. 1–24. We agree the asserted claims are not eligible.

### A. *Alice* Step One

Regarding *Alice* Step One, Appellant argues the district court erred in determining the asserted claims are directed to the abstract idea of "playing back recorded content." Appellant Br. 21 (citing J.A. 18). According to Appellant, this is an over-generalization of the claims, which are directed to a "specific asserted improvement that allows a presentation to be reviewed asynchronously . . . at the same time." *Id.* at 23–26. Even if we were to narrow the district court's characterization of the claims, however, we would still conclude the claims are directed to the patent-ineligible abstract idea of allowing asynchronous review of presentations, rather than any specific technological improvement, because they do not "describe *how* the alleged goal of [asynchronous review] is achieved." *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (emphasis added).

US PATENT NO. 7,679,637 LLC v. GOOGLE LLC                    7

"In cases involving software innovations, [the step-one] inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea . . . ." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (alterations in original). "While the § 101 inquiry must focus on the language of the asserted claims themselves," *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (citation modified), the claim itself need not explicitly recite the improvement. Rather, our precedent supports a variety of analytical approaches including, for example, (1) looking to the written description to understand the problem facing the inventor and what the patent describes as the invention, *id.* at 767–68; (2) considering whether any technological improvement is "embodied in the claims," *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017); and (3) analyzing whether the claims and written description "describe how [the] improvement was accomplished." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025) (collecting cases), *cert. denied*, __ S. Ct. __, 2025 WL 3507020 (Dec. 8, 2025).

We start our analysis with the claim language. Here, independent claim 2 recites that the first and second client applications are "arranged to allow" certain results and that the web conferencing system is "able to" achieve simultaneous recording and observing of current and previously presented parts of a computer screen video and data stream. '637 patent at 12:32–61 (claim 2). Similarly, independent claim 7 recites that "a first client application . . . *allows* at least one presenting participant to share data streams comprised of audio data and computer screen video data" and "a second client application . . . *allows* at least one observing participant to sense said data streams" in real time and asynchronously. *Id.* at 13:20–14:19 (claim 7) (emphases added). Neither these claims nor their dependent claims, however, disclose *how* the claimed

results are achieved or embody any specific technological improvement discernible to a skilled artisan from the patent or the prosecution history. Accordingly, we agree with the district court that the asserted claims of the '637 patent are directed to a patent-ineligible abstract idea. *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) ("[C]laims . . . drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results . . . are almost always found to be ineligible for patenting under Section 101.").

Appellant argues the asserted claims are not result-oriented because they recite two client applications enabling the manipulation (e.g., the sharing, recording, reviewing, and sensing) of multiple data streams, and thus "expressly explain how the systems need to be set up to accomplish the improvement" of asynchronous presentation review. Appellant Br. 29–30; *see* Oral Arg. at 5:07–7:32. We do not agree. The claims are result-oriented because they do not explain how the client applications achieve the recited manipulation of the data streams to enable asynchronous review. '637 patent at 12:32–61 (claim 2), 13:20–14:19 (claim 7). Moreover, the written description does not disclose any improvement to the underlying components to enable asynchronous review. *See id.* at 10:26–29 (disclosing known client applications); *id.* at 5:37–38 (acknowledging data streams were "commonly used in the audio visual field"); *id.* at 8:33–39 (stating "the workings of [the stream decompression and display] components resemble those of similar components in existing web conferencing . . . applications"). The written description does not suggest the use of two client applications and multiple data streams was a technical solution to any problem facing the inventor. *See id.* at 2:66–3:6, 3:61–64 (describing problem and invention). Instead, the written description suggests the invention is nothing more than the abstract idea of applying known time-shifting functions to web-conferencing

systems to solve "great inefficiencies" resulting from participants waiting for others to join a presentation or from participants missing part of a presentation. *Id.* at 3:2–6.

For these reasons, this case is not like *Contour IP Holding LLC v. GoPro, Inc.*, where the patent disclosed (and the claims reflected) "improving POV camera technology through specific means of generating high- and low-quality video streams in parallel and transferring a low-quality video stream to a remote device." 113 F.4th 1373, 1380 (Fed. Cir. 2024). Instead, this case is like *Hawk Technology Systems*, where the claims at issue also involved the manipulation of multiple data streams but "fail[ed] to recite a specific solution to make the alleged improvement—conserving bandwidth while preserving quality—'concrete'" and were "recited at such a level of result-oriented generality that those claims amount[ed] to a mere implementation of an abstract idea." 60 F.4th at 1358 (quoting *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1152 (Fed. Cir. 2019)).

Appellant additionally argues that, even if the asserted claims are result-oriented, Google similarly uses "functional claiming" in its own video conferencing patents and thus necessarily believes this approach to claim drafting does not result in subject matter ineligible claims. Appellant Br. 30–34. The subject matter eligibility of Google's patent claims is not before us and has no bearing on our analysis of the '637 patent. Moreover, we reject the notion that the mere existence of factually distinguishable Google-owned patents somehow amounts to a sweeping concession by Google that *all* patents involving functional claiming approaches are necessarily patent-eligible.

Because we conclude the asserted claims of the '637 patent are directed to a patent-ineligible abstract idea, we proceed to Step Two of the *Alice* test.

B.  *Alice* Step Two

Appellant argues the district court erred in its application of *Alice* Step Two by overlooking two inventive concepts recited in the asserted claims that allegedly make them patent-eligible: (1) a two client application system allowing for the manipulation of multiple data streams and (2) a "time-scale modification component." Appellant Br. 37–40. We do not agree either "transforms the nature of the claims into a patent-eligible application." *Alice*, 573 U.S. at 217 (citation modified).

First, Appellant largely repeats its *Alice* Step One arguments in pointing out the claims recite two client applications enabling the manipulation of distinct data streams. Appellant Br. 38. As explained above, the claims use result-oriented language with no specific implementation illustrating how to achieve the claimed results. "Merely describing the functions of the abstract idea itself, without particularity, . . . is simply not enough under step two." *Int'l Bus. Machs.*, 50 F.4th at 1382 (citation modified). Moreover, as the specification makes clear, the claimed client applications are conventional, well-known components, operating according to their ordinary functions to manipulate conventional data streams. *See* '637 patent at 5:10–20, 5:23–39, 8:33–39, 10:20–29. This cannot amount to an inventive concept, which must "reflect[] something more than the application of an abstract idea using 'well-understood, routine, and conventional activities previously known to the industry.'" *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)); *see also Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (no inventive concept in system claims that "only contain generalized software components arranged to implement an abstract concept on a computer"). Nor can conclusory allegations to the contrary "alter what [the]

patent itself states." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023).

Second, Appellant points to claims 4 and 7 of the '637 patent as allegedly supplying an inventive concept because they require an audio "time-scale modification component" able to maintain substantially consistent perceived audio quality (or aspects of audio quality) at a plurality of playback rates. Appellant Br. 39; '637 patent at 13:1–10 (claim 4), 13:20–14:19 (claim 7). Again, there is no disclosed inventive concept used to accomplish the claimed result, and the specification confirms the time-scale modification component was a conventional component implemented using off-the-shelf algorithms from related audio contexts including the "playback of recorded content." '637 patent at 3:19–32, 9:4–13. Under these circumstances, the time-scale modification component cannot, as a matter of law, constitute an inventive concept, which "must be more than well-understood, routine, conventional activity." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (citation modified).

We see no error in the district court's conclusion that claims 2–5 and 7–9 of the '637 patent are patent-ineligible and affirm the dismissal.

## II. Premature Dismissal

Appellant next argues that, as a procedural matter, the district court erred by deciding patent-eligibility at the motion to dismiss stage and should have granted Appellant leave to amend its complaint. Appellant Br. 40–44. We do not agree.

"A patent may be determined ineligible at the Rule 12(b)(6) stage 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (quoting *Aatrix*,

882 F.3d at 1125). And while "[t]he Ninth Circuit reviews a district court's denial of leave to amend a complaint for abuse of discretion," "[t]he question of futility of amendment . . . is reviewed *de novo*." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1288 (Fed. Cir. 2024) (citation omitted).

The Appellant has made no factual allegations that would preclude dismissal in this case. The abstract idea involves allowing asynchronous review of web conferencing presentations, and an inventive concept "must be significantly more than the abstract idea itself." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). No amendment to the complaint can alter what the '637 patent itself states regarding the conventionality of the client applications, data streams, and time-scale modification components discussed in the eligibility analysis detailed above. *See supra* Discussion § I; *Sanderling*, 65 F.4th at 706. Accordingly, we see no error in the district court's conclusion that granting leave to amend here would be futile. J.A. 25.

Appellant additionally argues the district court should have (1) treated Google's motion to dismiss as a motion for summary judgment because Google improperly relied on facts outside the complaint to attempt to establish what was known, routine, or conventional, and (2) conducted claim construction before dismissal. Both arguments are unavailing. The district court was not obligated to treat Google's motion as a summary judgment motion because the court was clear it did not rely on any extra-pleading materials. *See* J.A. 22 n.7; *Swedberg v. Marotzke*, 339 F.3d 1139, 1146 (9th Cir. 2003) ("A Rule 12(b)(6) motion to dismiss supported by extraneous materials *cannot* be regarded as one for summary judgment until the district court acts to convert the motion by indicating . . . that it will *not* exclude those materials from its consideration." (emphases added)). Nor was claim construction necessary because Appellant never proposed any constructions or

explained how a proposed construction would change the patent-eligibility analysis. *Mobile Acuity*, 110 F.4th at 1293 ("To defeat a motion to dismiss based on the purported need for claim construction, a patentee must propose a specific claim construction . . . and explain why any dispute . . . must be resolved before the scope of the claims can be understood for § 101 purposes." (citation modified)).

CONCLUSION

We have considered Appellant's remaining arguments and find them unpersuasive. Because claims 2–5 and 7–9 of the '637 patent are patent-ineligible and dismissal under Rule 12(b)(6) was appropriate, we affirm.

**AFFIRMED**

COSTS

Costs to Google.